David Frank **BAGGULEY** and John Jay Powers, Plaintiffs,

v.

William **BARR**, et al., Defendants.

No. 92–3389–RDR.

United States District Court, D. Kansas.

June 28, 1995.

David Frank Bagguley, Florance, CO, pro se.

John Jay Powers, Watsontown, PA, pro se.

Jackie A. Rapstine, Office of U.S. Atty., Topeka, KS, for defendants.

## ORDER

ROGERS, District Judge.

This action was filed by two inmates in federal custody. They appear *pro se* and proceed in forma pauperis. Plaintiffs complain their legal mail was opened in 1991 and 1992 outside their presence in violation of

prison regulations. Plaintiffs also complain they were wrongfully disciplined when prison officials discovered a check sent from Bagguley's mother to inmate Powers. Finally, Bagguley complains his property was unlawfully confiscated in 1991, in that it was seized without warrant in a criminal investigation. Plaintiffs seek damages for various alleged constitutional violations. At the time this action was commenced, plaintiffs Bagguley and Powers were incarcerated in the United States Penitentiary in Leavenworth, Kansas.

Currently pending are the following motions: Plaintiffs' motion to substitute the United States as the defendant in this action; Defendants' motion to dismiss or in the alternative for summary judgment; and Plaintiffs' motion for summary judgment and an accompanying motion for extension [1].

## I. *PLAINTIFFS' MOTION TO SUBSTITUTE THE UNITED STATES AS THE DEFENDANT.*

The Complaint filed by plaintiffs on October 16, 1992, alleges violations of plaintiffs' civil rights. Six individual defendants are named. By order of October 26, 1992, the United States Marshal was directed to serve summons and complaint on the defendants.

A review of the pleadings filed in this case indicates that plaintiffs are prosecuting this action as a *Bivens* action, solely for money damages. *Bivens v. Six Unknown Federal Narcotic Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In opposition to defendants' dispositive motion, plaintiffs also state that the entirety of their suit is based upon constitutional tort and attempt, in a very general manner, to distinguish as inapplicable the Federal Tort Claims Act cases cited by defendants.

 In order to maintain a *Bivens* cause of action, plaintiffs must proceed against the individual defendants in their individual ca-

pacities. *Pleasant v. Lovell,* 876 F.2d 787, 793 (10th Cir.1989). On September 24, 1993, however, plaintiffs filed a motion to substitute party, specifically requesting "to substitute the United States of America as the named defendant in this action".

Defendants filed a response stating they have no objection to the motion to substitute and further requesting that the individual defendants be dismissed with prejudice.

Plaintiffs have consistently alleged that this action is brought as a *Bivens* action. Inasmuch as a *Bivens* action may proceed only against a federal official in his or her individual capacity, the instant motion to substitute the United States as the named defendant in this action would defeat, by virtue of sovereign immunity, plaintiffs' constitutional claims brought pursuant to *Bivens.*[2] *Chapoose v. Hodel,* 831 F.2d 931, 935 (10th Cir. 1987) (*Bivens* does not create exception to sovereign immunity for suits against United States).

The apparent lack of any purpose to be served by the motion to substitute persuades the court that, in the interests of justice, the motion to substitute will be denied. *Compare Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) ("A pro se litigant's pleadings are to be construed liberally" and read in such a manner as to "state a valid claim on which the plaintiff could prevail").

## II. *THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT.*

Both plaintiffs and defendants have filed motions for summary judgment and supporting memoranda. (See Docs. 25, 26 and 40).

Summary judgment is appropriate only when the evidence, construed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

---

1. Plaintiffs' motion for extension will not be considered by the court as it lacks a certificate of service. Denial of the motion, however, does not affect any of the issues presented by the pending motions.

2. Although suit directly against the United States would be appropriate assuming plaintiff Bagguley intended to pursue a claim under the Federal Tort Claims Act for deprivation of property, substitution of the United States for purposes of that claim would be futile inasmuch as Bagguley has failed to exhaust his administrative remedies. (See discussion, *infra* ).

The moving party has the burden of showing the absence of a genuine issue of material fact, and this burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue for trial. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410 (10th Cir.1993).

■ In support of their motion for summary judgment, defendants set forth proposed statements of uncontroverted fact. Plaintiffs have not controverted any of those factual statements within their response to defendants' motion. As such, and in accordance with Local Rule 206(c), Plaintiffs have admitted those facts for purposes of these summary judgment proceedings.

### A. The Party Defendants—Issues relating to the capacity in which they were sued and effective service.

■ To the extent that plaintiffs' constitutional claims are asserted against the individual defendants in their official capacities, those claims are barred by sovereign immunity. *See Pleasant, supra*, 876 F.2d at 793 (sovereign immunity generally bars suit for damages against federal agents in their official capacity).

■ Concerning the claims made against the individual defendants in their individual capacities, all defendants (except Barr) argue that the court lacks jurisdiction over them because they have not been properly served in their individual capacities. Although the U.S. Marshall's office attempted to serve defendants by mailing the summons and complaint, defendants show that an acknowledgement of service did not accompany the summons and no acknowledgement of service has been returned. Defendants rely upon this court's decision in *Bagguley v. James, et al.*, Case No. 91–4291–S, 1992 WL 223761 in support of their argument that an acknowledgement of receipt of service by mail must be returned for effective service. That case, however, was not an in forma pauperis action. Insufficient service is not the responsibility of the plaintiffs in this action where they are proceeding in forma pauperis. *See Mitchell v. Federal Bureau of Prisons, et al.*, 53 F.3d 342 (10th Cir.1995) (A pro se prisoner should not be penalized for reliance on a United States Marshall to effect service under Fed.R.Civ.P. 4(c)(2) and 28 U.S.C. § 1915(c)). Defendants' motion for summary judgment on the grounds of ineffective service is denied.[3]

In response to defendants' motion for summary judgment, plaintiffs admit that defendants Barr, Henman and Harrell[4] were not sufficiently involved in the incidents at issue in this action and that they should be dismissed as defendants. Noting that plaintiffs' claims against these defendants lack the requisite personal involvement in any alleged constitutional violations[5], defendants Barr, Henman and Harrell are dismissed from this action.

### B. Alleged Improper Handling of Legal Mail.

In Count I of their complaint, plaintiffs allege that defendants Groves, Droke and

---

3. Because of the ultimate resolution of plaintiffs' claims, however, no further order concerning service of process is necessary.

4. Defendant Barr is former Attorney General of the United States. Defendants Henman and Harrell were the Warden and Associate Warden at the Leavenworth Penitentiary.

5. For personal liability, a government official "must have participated or acquiesced in the constitutional deprivations of which complaint is made". *Kite v. Kelley*, 546 F.2d 334, 337–38 (10th Cir.1976).

Hubble opened 28 pieces of their legal correspondence in violation of statutory law and plaintiffs' civil and constitutional rights. Plaintiffs assert they are entitled to $1000 per letter that was unlawfully opened.

As a preliminary matter, the court will address plaintiffs' attempt to impose liability against defendants for their purported violation of 18 U.S.C. §§ 1701 and 1702. These statutory provisions impose criminal liability for obstruction of mail and provide no private right of action. *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144, 162 (D.C.1976). Further, any purported violation of this statute by defendants does nothing to support plaintiffs' *Bivens* claims. "A violation of a statute or regulation does not rise to a constitutional level unless the statutory or regulatory provisions supply the basis for the claim of a constitutional right". *Arcoren v. Peters*, 829 F.2d 671, 676–77 (8th Cir.1987), *cert. denied* 485 U.S. 987, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988). As such, defendants are entitled to summary judgment to the extent that plaintiffs are seeking to impose liability against defendants for their alleged violations of §§ 1701 and 1702.

In defense of plaintiffs' claims that their legal mail was opened in violation of their constitutional rights, defendants assert qualified immunity. The Tenth Circuit summarized the structure for applying the doctrine of qualified immunity in *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir.1994):

> [W]hen a defendant raises qualified immunity, the burden shifts to the plaintiff to establish the defendant violated clearly established constitutional rights. *Hannula v. City of Lakewood*, 907 F.2d 129, 130–31 (10th Cir.1990). Further, the Supreme Court mandates a plaintiff do more than simply allege abstract violations. Instead, a plaintiff is charged with making a particularized showing: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Finally, a plaintiff has to "demonstrate a substantial correspondence between the conduct in question and prior

law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula*, 907 F.2d at 131.

\* \* \* \* \* \*

Once the plaintiff satisfies his burden, the defendant must then show "no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991) (citations omitted).

It should be noted that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 1096, 1097, 89 L.Ed.2d 271 (1986).

The gist of plaintiffs' claims is that 28 pieces of legal mail were opened outside their presence. "It is settled that an inmate's legal mail may be opened only in the presence of the inmate." *Bledsoe v. Biery*, 814 F.Supp. 58 (D.Kan.) *aff'd* 992 F.2d 1222 (10th Cir.1993). While an inmate's legal mail is to be opened only in the presence of an inmate, prison officials may require that legal mail be specially marked by the sender in order to facilitate identification of legal mail. *Wolff v. McDonnell*, 418 U.S. 539, 575–77, 94 S.Ct. 2963, 2984–2985, 41 L.Ed.2d 935 (1974). Defendants assert that, with one exception, the mail which plaintiffs contend was improperly opened was not sufficiently identified, in accordance with applicable regulations, as legal or special mail.

The federal regulations specifically addressing the processing of prisoner mail were summarized by the court in *U.S. v. Stotts*, 925 F.2d 83, 85 (4th Cir.1991):

> Federal regulations divide incoming prison mail into two categories: general and special. General mail is subject to being opened by prison officials, checked for contraband, read for plans to perform illegal acts, and then reclosed and delivered to the prisoner. 28 C.F.R. § 540.14 (1990).

[footnote omitted] Special mail refers to certain written communications from attorneys, courts, congressmen and other public officials. It enjoys more protection than general mail in that it cannot be read by prison officials and can be opened to check for contraband only in the presence of the prisoner to whom it is addressed. *Id.* § 540.18.

Correspondence qualifies as special mail only "if the sender is adequately identified on the envelope, and the front of the envelope is marked 'Special Mail—Open Only in the presence of the inmate.'" *Id.* § 540.18(a). Mail from an attorney has to be marked not only with the "Special Mail" phrase, but also with the attorney's name and the fact the sender is an attorney. *Id.* § 540.19(b).

■ Plaintiffs submitted copies of 23 envelopes in support of their claim that legal mail was being opened. Many of the envelopes do not adequately identify the name of any specific attorney as the sender of the correspondence.[6] Although in many instances a law firm is identified, such a general designation does not satisfy the requirements of 28 C.F.R. § 540.19(b), which provides that mail from an attorney will be treated as special mail only if the envelope is marked with the *attorney's name*, further indicates that the person is an attorney, and is marked as "special mail—open only in the presence of the inmate." *Accord, Stotts*, 925 F.2d at 87 (requirement that specific attorney be identified as sender is reasonably related to security interests of prison administrators).

Those envelopes which do not identify a specific attorney as the sender do not qualify as special mail pursuant to applicable regulations. As such, and absent any controlling caselaw questioning the validity of the regulations, defendants acted objectively reasonable in processing the mail as general mail and are entitled to qualified immunity.

Another envelope produced by plaintiffs[7] is clearly not entitled to special mail status because it does not contain any special markings as required by 28 C.F.R. §§ 540.18 and 540.19(b). The same is true with respect to three other envelopes[8] that have no decipherable markings which would alert prison administrators that these pieces of correspondence were entitled to special mail status.

Contrary to plaintiffs' bare assertions, the evidence demonstrates that two of plaintiffs' exhibits[9] were treated as special mail. One other envelope[10] is not addressed to the plaintiffs (or to any other person for that matter) and is, therefore, irrelevant.

This leaves three envelopes, each addressed to plaintiff Powers[11], which ostensibly could be viewed as legal mail: Exhibit 15, with an undecipherable postmark, shows a return address from Suzanne Philbrick, Attorney at Law, and further identifies the mail as "Attorney/Client Privileged Correspondance [sic]"; Exhibit 16, postmarked 12/18/90, shows a return address from the Law Office of James F. Wyatt, III and includes the statement "Opened [sic] in presence of inmate"; and Exhibit 22, postmarked 9/3/92, shows a return address from Robert A. Young, a County Court Judge in Florida.

■ Although factual disputes remain as to whether these exhibits were properly marked as special mail and were opened outside the presence of Powers, the court finds no material issue of fact which would preclude the entry of summary judgment on qualified immunity grounds. For, assuming these three envelopes were opened in violation of the applicable federal regulations, such conduct, under the circumstances of this case, does not rise to the level of a constitutional violation.

The evidence demonstrates that approximately 100 pieces of mail were delivered to

---

**6.** See plaintiffs' exhibits 1–6, 9, 13, 14, 20, 21 and 23, Doc. 16.

**7.** See plaintiffs' exhibit 18, Doc. 16.

**8.** See plaintiffs' exhibits 8, 10 and 11, Doc. 16.

**9.** See plaintiffs' exhibits 7 and 17, Doc. 16.

**10.** See plaintiffs' exhibit 19, Doc. 16.

**11.** Plaintiff Bagguley has failed to provide any evidence that any correspondence addressed to him was addressed in such a manner as to qualify as special mail.

each of the plaintiffs between July 23, 1991 through October 3, 1992. There is no evidence indicating that the opening of the let-. ter from Judge Young was anything other than an isolated mistake. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir.1990) (The opening of one piece of an inmate's constitutionally protected mail was an isolated incident and "without any evidence of improper motive or resulting interference with Smith's right to counsel or to access to the courts [did] not give rise to a constitutional violation") and *Haston v. Galetka*, 799 F.Supp. 1129, 1132 (D.Utah 1992) ("in the absence of any 'pattern' of improper behavior by the defendants, a constitutional violation as addressed in *Maschner* requires [a showing of] improper motive by the defendants .. or a resulting interference with his right to counsel or access to the courts").

With respect to the possibility that the envelopes with return addresses from two different attorneys were not handled in accordance with · applicable federal regulations[12], there is no evidence of a pattern of improper behavior by defendants. Indeed, both plaintiffs routinely received special mail which was opened in their presence. Nor is there any evidence that the alleged and disputed isolated instances of mishandled mail interfered with Power's right to counsel or access to the courts.

Based upon the foregoing, defendants are entitled to qualified immunity with respect to plaintiffs' claims that defendants opened their mail in violation of their constitutional rights.

## C. Disciplinary Action.

Count II of plaintiffs' complaint alleges that plaintiffs were wrongfully disciplined in January of 1992 for giving and receiving money when prison officials learned that Bagguley's mother had sent Powers a check for $200.[13]

The uncontroverted facts set forth by defendants include the following:

On January 23, 1992, Michael Hubble, the Unit Manager at USPL, received three letters addressed to inmate Bagguley from Bagguley's family in Australia. In accordance with 28 C.F.R. §§ 540.12 and 540.14, this general correspondence was opened, inspected for contraband and read. The correspondence concerned the payment of $200 to Powers. Also in accordance with §§ 540.12 and 540.14, a letter addressed to inmate Powers from Bagguley's family was inspected on January 22, 1992. The letter contained a check for $200.00 made payable to Powers. The letter noted the enclosed check and stated "many thanks John for your help with David's case it's very much appreciated". Plaintiff Bagguley admits that the $200 was a gift from Bagguley's mother for the legal work Powers had performed for Bagguley. Plaintiffs deny that either requested that the money be sent.

Upon reviewing the correspondence, plaintiffs were charged with committing the prohibited act of giving and/or receiving money in violation of Code 217. The incident reports were delivered to Powers and Bagguley on January 22 and 23, 1992, respectively. Both were placed in administrative detention pending investigation and a hearing. The matter was then referred to the Unit Disciplinary Committee, which referred the charges to a Disciplinary Hearing Officer ("DHO") for further hearing. Plaintiffs were afforded separate hearings and each requested three witnesses who appeared for the plaintiffs. Following these hearings, the DHO determined that plaintiffs had committed the acts as charged and imposed disciplinary sanctions. After administrative ap-

---

**12.** Defendants were unable to present evidence as to whether the correspondence from attorney Philbrick, Ex. 15, which plaintiff Powers alleges he received on February 6, 1991, was processed as special mail because the mail log book covering that time period has been lost. Defendants admit, however, that the correspondence was sufficiently identified as special mail. Defendants deny that the correspondence from the law office of James Wyatt was sufficiently identified, but the Court finds, for purposes of the summary judgment motion, that it was sufficiently identified as special mail.

**13.** Plaintiffs' complaint includes an allegation that the discipline was in retaliation for complaints Bagguley had made about improper mail handling. Plaintiffs' retaliation claim is wholly conclusory as plaintiffs have failed to present any evidence in support of a retaliation claim.

peals were filed by the plaintiffs, a rehearing of the charges was ordered by the Regional Director. Upon rehearing, the DHO determined that the prohibited act was more appropriately one of "attempted giving and/or receiving money" pursuant to Code 217A.

■ Code 217, the provision which plaintiffs were found to have violated, is contained within Table 3, 28 C.F.R. § 541.13:

Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes.

Plaintiffs first suggest that in order to establish a violation of Code 217, evidence showing that the money was intended for the purpose of introducing contraband was required. Plaintiffs' purported construction of the disciplinary rule is unsupported by the language of the rule, as violation of the Code is also established if the money is exchanged for any "prohibited purpose". The evidence demonstrates that inmates are not permitted to give money to, or solicit money from, other inmates as payment for assistance with their legal work.

■ Plaintiffs also suggest that defendants acted wrongfully by changing the code number of the violation from 217 to 217A following the plaintiffs' rehearing. The "A" designation simply reflects an attempted violation, as specified within 28 C.F.R. § 541.13(b). Moreover, § 541.13(b) specifically provides that "attempting" to commit any offense "shall be considered the same as a commission of the offense itself".

■ The record provides no support for any claim that plaintiffs did not receive the procedural due process guarantees set forth in *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). To the extent plaintiffs complain the evidence did not support the disciplinary actions, this court's review is quite limited. The constitutional evidentiary standard to be used when courts review prison discipline

decisions is whether any or some evidence supports the disciplinary decision. *See Superintendent, Mass. Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454–55, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985); *Dotson v. Maschner*, 764 F.Supp. 163, 165 (D.Kan.1991). That standard is easily satisfied in the present case, given plaintiff Bagguley's admission that the money was intended as a "gift" for Power's assistance with legal work, coupled with the correspondence from Bagguley's family indicating Bagguley's involvement in directing the payment of the money to Powers.[14]

Defendants are entitled to summary judgment with respect to Count II of plaintiffs' complaint.

### D. Bagguley's claim concerning confiscation of property.

Plaintiff Bagguley claims, within Count III of the complaint, that defendants violated his 5th amendment due process rights and the statutory proscriptions of 18 U.S.C. §§ 1701 and 1702 [15] by confiscating certain of his property on October 14, 1991.

Prior to the filing of this action, plaintiff Bagguley filed a separate civil action captioned *Bagguley v. Droke, et al.*, Case No. 92–3302, 1995 WL 261874, alleging the confiscation of property from plaintiff's cell on October 14, 1991, constituted a violation of plaintiff's constitutional rights. A Memorandum and Order was entered in that case on April 17, 1995, finding no constitutional violation as a result of the search of Bagguley's cell and the confiscation of his property.

The constitutional claims arising out of the search of plaintiff Bagguley's cell and confiscation of his personal possessions in October of 1991, therefore, have been considered, addressed and resolved by this Court's previous Order in Case No. 92–3302. No further consideration of alleged constitutional violations is warranted.

---

**14.** With reference to an earlier check that had been returned to Bagguley's parents, his parents stated in their January 15, 1992 letter to Bagguley that they needed "full details of whom I had to send it".

**15.** As previously indicated, §§ 1701 and 1702 do not provide a private right of action.

Although plaintiffs' complaint does not assert a claim for relief under the Federal Tort Claims Act ("FTCA"), it is suggested in response to defendants' motion for summary judgment that plaintiff Bagguley could recover for both a violation of his constitutional rights and pursuant to the Federal Tort Claims Act. Even if plaintiff Bagguley is purporting to state a claim for relief under the FTCA, such a claim is barred for failure to exhaust his administrative remedies. The only administrative tort claim filed by Bagguley concerning the search of his cell in October of 1991 referenced the destruction of his book, *Gems Made by Man*. By pleading filed by plaintiffs on January 27, 1993, however, it was expressly stated that the confiscation of that book is not a part of this lawsuit.

Accordingly, and for the reasons stated herein,

IT IS HEREBY ORDERED that plaintiffs' motion to substitute (Doc. 30) is denied; that defendants' motion for summary judgment (Doc. 25) is granted; and that plaintiffs' motion for summary judgment (Doc. 40) is denied. This matter is hereby dismissed and all relief is denied.