(127 P.3d 342)

No. 93,574

STEVEN KENT BLOOM, *Appellant*, v. DUANE MUCKENTHALER, *et al.*, *Appellees*.

Opinion filed August 12, 2005.

*Steven Kent Bloom,* appellant pro se.

*Fred W. Phelps, Jr.,* of Kansas Department of Corrections, of Topeka, for appellees.

Before, MALONE, P.J., GREEN and BUSER, JJ.

BUSER, J: Steven Kent Bloom, an inmate at the Lansing Correctional Facility, brought this pro se civil rights action under K.S.A. 2004 Supp. 60-1501 and 42 U.S.C. § 1983 (2000). Bloom appeals the district court's dismissal for failure to state a claim. We affirm in part, reverse in part, and remand with directions.

## Factual and Procedural Background

Bloom filed a civil rights lawsuit pursuant to K.S.A. 2004 Supp. 60-1501 and 42 U.S.C. § 1983 against the Kansas Department of Corrections and various named and unnamed employees (KDOC). On October 5, 2004, the district court considered KDOC's answer and motion to dismiss. The district court made separately enumerated findings, which included a list of Bloom's claims:

"11. Plaintiff claims that he has been denied his 'right to freedom of speech.'
"12. Plaintiff claims that he has been denied free and uninterrupted communications with courts, publishers and educational institutions.
"13. Plaintiff claims that acting warden Simmons, of the El Dorado Corrections Facility, willfully denied him his cash funds to pay a filing fee in the U.S. District Court.
"14. Plaintiff claims that he was unjustly charged with a disciplinary violation and held in segregation from 4-22-03 through 5-12-03 and the charge was dismissed.
"15. Plaintiff claims that he was denied the use of his typewriter during this time period and was denied his right to docket an appeal with the Kansa[s] Supreme Court.
"16. Plaintiff claims that certain pieces of mail were pre-opened illegally.
"17. Plaintiff claims that he was deprived of his fair turn in line for access to the law library and to make legal copies.
"18. Plaintiff claims that he was denied catalogues for the purchase of books.
"19. Plaintiff claims that he is discriminated against because he has to trade in his old typewriter ribbons when he buys new one[s] and the costs of these ribbons is [*sic*] deducted from his inmate store account limits.
"20. Plaintiff claims that he was denied attendance at Donnelly College.
"21. Plaintiff claims that IMPP 11-101 is used to deny him his right to purchase books because it limits spending to $30.00.

"22. Plaintiff claims that he was assigned a job by KDOC which is contrary to his disability and was done in retaliation to his filing a law suit [*sic*] against K.D.O.C. and staff."

In its answer, KDOC raised failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (2000); immunity under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*; failure to state a claim under K.S.A. 60-212(b)(6); qualified immunity under federal law; and immunity under the Eleventh Amendment to the United States Constitution.

The motion to dismiss raised the same grounds for dismissal, adding res judicata and lack of personal participation by the individual defendants in the acts alleged. The record on appeal does not contain a response to the motion to dismiss. The district court docketing statement, however, shows a six-page reply to defendant's motion to dismiss was filed on September 29, 2004. The district court docketing statement also shows "[c]orrespondence from [Bloom]" was filed on October 4, 2004, and a motion to supplement from Bloom was filed on October 6, 2004. These additional filings are also not in the record on appeal.

The district court granted KDOC's motion and dismissed the lawsuit with prejudice. The district court held Bloom to a heightened standard of pleading because KDOC had raised qualified immunity as a defense. The district court determined Bloom had not met that standard and had failed to state a claim. Finally, applying K.S.A. 75-52,138, the district court found Bloom had not proven exhaustion of his administrative remedies. The district court declined to consider the other grounds raised by KDOC.

## Standard of Review

Pro se pleadings are liberally construed. *Bruner v. State*, 277 Kan. 603, 605, 88 P.3d 214 (2004). The analysis depends on the facts alleged by the pro se petitioner, not the form of the pleading. *Jackson v. State*, 1 Kan. App. 2d 744, 745, 573 P.2d 637 (1977), *rev. denied* 225 Kan. 844 (1978). When reviewing a dismissal for failure to state a claim, a petitioner's facts and any reasonable inferences are assumed to be true. The question is whether the facts and inferences state a claim on any possible theory. *McCormick v.*

*Board of Shawnee County Comm'rs,* 272 Kan. 627, 634, 35 P.3d 815 (2001),

Whether an official enjoys qualified immunity under certain facts is reviewed de novo. See *Huffmier v. Hamilton,* 30 Kan. App. 2d 1163, 1165, 57 P.3d 819 (2002), *rev. denied* 275 Kan. 964 (2003).

"An allegation that a party is required to or has failed to exhaust administrative remedies presents a question of law, and the appellate court's standard of review is unlimited. [Citation omitted.]" *In re Habeas Corpus Application of Pierpoint,* 271 Kan. 620, 622-23, 24 P.3d 128 (2001).

### *Qualified Immunity Defense*

In considering KDOC's qualified immunity defense, the district court held Bloom to the heightened standard of pleading set out in *Breidenbach v. Bolish,* 126 F.3d 1288, 1292 (10th Cir. 1997). In *Currier v. Doran,* 242 F.3d 905, 912, 916 (10th Cir. 2001), however, a panel of the Tenth Circuit Court of Appeals reversed *Breidenbach* and held the heightened standard could not be mandated by appellate courts after *Crawford-El v. Britton,* 523 U.S. 574, 140 L. Ed. 2d 759, 118 S. Ct. 1584 (1998). In *McCormick,* the Kansas Supreme Court followed *Currier* and held the heightened standard of pleading should not be applied in Kansas state courts. 272 Kan. at 638. In *Huffmier,* 30 Kan. App. 2d at 1167-68, this court, relying on *McCormick,* held a trial court erred in applying the *Breidenbach* heightened standard. Similarly, the district court should not have held Bloom to the heightened standard of pleading.

In *Huffmier,* the panel proceeded to consider the qualified immunity issue under the proper standard. See 30 Kan. App. 2d at 1166-71. The appeal in *Huffmier* was from a summary judgment ruling, and all the facts were before the appellate court. In the present case, the district court dismissed the lawsuit based only on the initial pleadings.

We must consider whether we apply the proper standard to the existing record in order to rule on the qualified immunity issue " 'at the earliest possible stage of litigation.' [Citation omitted.]" *Huffmier,* 30 Kan. App. 2d at 1167 (quoting *Saucier v. Katz,* 533

U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 [2001]). The fact that Bloom's reply to his motion to dismiss and the motion to supplement are not in the record is critical because the United States Supreme Court "has never indicated that qualified immunity is relevant to the existence of the plaintiff's cause of action; instead . . . it [is] a defense available to the official in question. [Citations omitted.]" See *Gomez v. Toledo*, 446 U.S. 635, 640, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980). In other words, a "plaintiff need not overcome the [immunity] defense in the complaint. [Citation omitted.]" *Alexander v. Newman*, 345 F. Supp. 2d 876, 881 (W.D. Tenn. 2004). Bloom's reply to the motion to dismiss, and perhaps the letter or supplement, would have been the means by which he would have responded to the qualified immunity defense if, in fact, he did respond.

We conclude that the absence of Bloom's responsive pleadings from the record on appeal deprives this court of its ability to consider the qualified immunity issue under the correct standard. We will still consider whether Bloom has exhausted his administrative remedies, however, and whether he has otherwise stated a claim on any exhausted issues.

### Exhaustion of Administrative Remedies

In ruling against Bloom, the district court relied on K.S.A. 75-52,138, which requires an inmate filing a civil action against the State to exhaust administrative remedies prior to filing the lawsuit. State exhaustion requirements, however, do not apply to 42 U.S.C. § 1983 actions. See *Prager v. Kansas Dept. of Revenue*, 271 Kan. 1, 16, 20 P.3d 39 (2001). As this court noted in *Huffmier*, 30 Kan. App. 2d at 1166, "[s]tate law defenses to state law claims are simply not the same as federal law defenses to federal claims."

Certain prisoner § 1983 cases are subject to an exhaustion requirement under federal law. See *Prager*, 271 Kan. at 16. The PLRA states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision is not jurisdictional,

but it does oblige an inmate to plead exhaustion in the complaint. See *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1208-09 (10th Cir. 2003). Because "the final administrative decision is central to a prisoner's claim . . . the prisoner is required to plead exhaustion and provide evidence of exhaustion. [Otherwise, the prisoner] has failed to state a claim and . . . is vulnerable to dismissal." 355 F.3d at 1212. The PLRA is applied in state courts. See, *e.g., Toney v. Briley*, 351 Ill. App. 3d 295, 297, 813 N.E.2d 758 (2004); *Higgason v. Stogsdill*, 818 N.E.2d 486, 489 (Ind. App. 2004).

The Kansas prison administrative grievance procedures generally allow appeals to the Secretary of Corrections. See K.A.R. 44-15-102(c). The documents Bloom attached to his petition and included in the two appendixes show an appeal to the Secretary of Corrections of two grievances (claims Nos. 16 and 20), which were both determined against him and appealed in the instant case. The balance of Bloom's claims were not exhausted and, as a result, must be dismissed without prejudice. See *Sandlin v. Roche Laboratories, Inc.*, 268 Kan. 79, 88, 991 P.2d 883 (1999) (remanding with directions to dismiss without prejudice so petitioner could exhaust administrative remedies); *Steele*, 355 F.3d at 1213. We next address claims Nos. 16 and 20.

*Analysis of Claims Nos. 16 and 20*

On October 1, 2002, Bloom complained that he received "Legal Mail" which had been opened (claim No. 16). This was given grievance No. 00010501, and the next day a prison officer wrote: "It is not [prison] policy to open legal mail in the mail room, it is opened in front of the inmate . . . ." The officer stated he had spoken with the mail room personnel and learned that the letter in question was from Bloom's wife. The officer directed Bloom to the inmate rule book, which defined legal mail as "mail affecting the inmate[']s right to access to the courts or legal counsel," such as mail from "any lawyer, a judge, a clerk of a court or any intern or employee of legal services for prisoners." Bloom appealed, stating the mail was actually from his mother, who "holds a Power-Of-Attorney on [his] behalf." Bloom claimed the envelope identified

the sender as: "Myrl Bloom, P.O.A." and was addressed to him with the notation: "Legal Docs. Copies Ct. Records." Both the warden and the Secretary of Corrections affirmed the response given to Bloom.

On April 15, 2004, Bloom complained he had not been let out of his cell on March 24, 2004, to attend a Donnelly College class (claim No. 20). The complaint was given grievance No. AA20040885, and on June 1, 2004, defendant Duane Mucken-thaler responded that a corrections officer unfamiliar with the area failed to let Bloom out of his cell on March 24, which was the first day of class. According to Muckenthaler, he called Donnelly College the next day to inform them of the situation and was told nothing had happened on the first day of class. Muckenthaler further said he told Bloom he could still attend the class, but that Bloom refused. Muckenthaler also stated Bloom was not charged for the class. The warden and the Secretary of Corrections agreed with Muckenthaler's response.

The next question is whether we may reach the merits of claims Nos. 16 and 20. Although the district court erroneously applied a heightened pleading standard in holding that Bloom had failed to state a claim, " '[a] trial court's reason for its decision is immaterial if the ruling is correct for any reason.' " See *Drake v. Kansas Dept. of Revenue*, 272 Kan. 231, 239, 32 P.3d 705 (2001) (quoting *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 118, 936 P.2d 714 [1997]). We will, therefore, consider whether Bloom failed to state a claim more generally; that is, accepting Bloom's description of events and any reasonable inferences as true, does his petition state a claim under any possible theory? See *McCormick*, 272 Kan. at 634; *Yousef v. Reno*, 254 F.3d 1214, 1219 (10th Cir. 2001).

Applying a liberal construction to claim No. 16, Bloom alleges one piece of legal mail was opened before he received it and that this was done to antagonize him. He does not allege a pattern of behavior, and he does not allege any prejudice. Accepting these allegations as true, Bloom fails to state any facts from which a claim may be reasonably inferred under any legal theory.

It is true an inmate's legal mail may be opened only in his or her presence. *Bagguley v. Barr*, 893 F. Supp. 967, 971 (D. Kan.

1995). The response given Bloom shows this is the prison policy, and the policy also conforms with the administrative regulations. See K.A.R. 44-12-601(e). The regulation specifies, however, that incoming legal mail must be "clearly identified as legal, official, or privileged mail . . . ." K.A.R. 44-12-601(e). The United State Supreme Court has approved similar requirements, which "assure that the letters marked privileged are actually from members of the bar." *Wolff v. McDonnell*, 418 U.S. 539, 577, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974).

Bloom's letter was not from a member of the bar, and he states no facts which would otherwise render it privileged. His mother's alleged power of attorney, even if it could be deciphered from the initials "P.O.A." on the return address, did not communicate that the letter involved Bloom's access to the courts. See *Sallier v. Brooks*, 343 F.3d 868, 875 (6th Cir. 2003) (return address of American Bar Association did not convey that the communication involved an inmate's legal representation). A legal power of attorney does not confer upon the holder a right to appear in court on behalf of another. The notation indicating the letter contained copies of court files also would not clearly identify the contents as privileged. Court files are generally public documents.

Even if the letter was legal mail under the administrative regulations, this one incident in itself does not support an action for breach of Bloom's constitutional rights. To properly allege a constitutional violation, an inmate must show a pattern of censorship or other practices which chill or impede the inmate's access to legal representation and the courts. See *Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003). Bloom did not meet this standard.

Turning to claim No. 20 under a liberal construction, Bloom alleges his attendance at Donnelly College was approved, but that he was not allowed out of his cell to attend classes. As discussed above, the documents in the appendix show he was mistakenly not let out for the first day of class. Nothing of significance occurred that day, and later, Bloom refused on his own volition to attend the course. He was not charged for the class.

These facts not only fail to state a legal claim, they are frivolous. Although Bloom may have missed the first day of class, the decision

to not attend thereafter was his own. The first-day confusion over scheduling does not, in itself, support a claim under the United States Constitution or any other federal law. "There is no constitutional right to prosecute an action that is frivolous or malicious." *State ex rel. Stovall v. Lynn*, 26 Kan. App. 2d 79, Syl. ¶ 1, 975 P.2d 813, *rev. denied* 267 Kan. 890 (1999).

Having determined that Bloom exhausted claims Nos. 16 and 20, we affirm the district court's dismissal with prejudice of these two claims for the above-stated reasons. The district court's dismissal with prejudice of the remainder of the claims, as identified by the district court, however, is reversed and remanded. On remand, the district court is directed to dismiss Bloom's remaining claims without prejudice.

Affirmed in part, reversed in part, and remanded with directions.