NOT DESIGNATED FOR PUBLICATION

No. 124,167

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CLEDITH BOHANON,
*Appellant*,

v.

AMANDA STONE, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed April 8, 2022. Reversed and remanded with directions.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Jon D. Graves*, legal counsel, of Kansas Department of Corrections, of Hutchinson, for appellees.

Before GARDNER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM: Cledith Bohanon filed a K.S.A. 60-1501 petition in the Reno County District Court alleging that, in violation of a Kansas regulation, the prison staff at Hutchinson Correctional Facility (HCF) opened his legal mail outside his presence. He asserted this conduct occurred on more than one occasion, and the actions implicated his rights under the First Amendment to the United States Constitution, as well as his right to privacy. The district court summarily denied Bohanon's petition in a single paragraph. Bohanon now brings the matter before us to determine whether summary denial was appropriate. Following a comprehensive review of the case, along with the governing

1

legal authority, we find that Bohanon's petition alleged sufficient facts to avoid summary dismissal. The decision of the district court is reversed and remanded with directions.

FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 2020, Bohanon, an inmate at HCF, wrote to the mailroom to complain that many times he received legal mail that was already opened when it arrived. He requested $1,250 in compensatory and punitive damages. Four days later, Bohanon received a response that advised: "If legal mail is opened in mailroom, it is done in error and 'opened in error' will be written on the envelope [and] placed in unit team box."

The next day Bohanon filed a similar complaint and the mailroom conceded that "there was an opened letter addressed KDOC legal counsel that was opened when unit team received it from the mailroom." The reply also included an apology.

The next week Bohanon filed an inmate complaint related to the November 5th incident. While the complaint highlighted that occurrence in particular, it also explained that similar incidents "repeatedly" occurred. Bohanon received a response from T. Bartley, CCI, that stated:

> "After investigation into your complaint, I found that your legal letter was opened in error. This action was not done in malice but was a mistake on the part of the mailroom. There are over 1,600 offenders housed at the Hutchinson Correctional Facility, it is reasonable to assume that there will be an error made occasionally. The mailroom usually marks the legal letter that is opened by mistake 'opened in error', however, this did not happen in this case. I do not believe that your legal letter was opened intentionally and unit team apologies for this error. If this issue continues to happen in the future, I encourage you to report it to your assigned unit team counselor."

Unsatisfied with the response, Bohanon took his complaint up the chain to the Warden's office. The Warden reviewed the matter and ultimately agreed with the

2

conclusion that the "legal letter was not opened in malice." He reiterated the fact that the mailroom employees bear the responsibility of processing a considerable amount of mail and the staff notified Bohanon of their misstep by writing "opened in error" on his letter.

Bohanon was no more satisfied with the Warden's response than that of the mailroom, so he appealed the decision to the Secretary of Corrections. He explained that HCF mailroom employees repeatedly opened his legal mail outside his presence, the Warden should have paid the compensatory damages he requested, and if the Warden continued to refuse to do so, the parties would be forced to return to court to settle the matter. The Secretary's designee replied:

> "It appears, by and large, based on extensive written documentation available to this reviewer that staff are opening your legal mail within your presence, and under your observation, prior to delivering it. Evidence suggests that the instances where this does not occur are the exception and likely a result of harmless error. With that said, the staff at the facility have taken accountability for this error and will continue to work diligently to reduce future occurrences of legal mail being inadvertently opened."

The response offered Bohanon little solace, so he filed the K.S.A. 60-1501 petition that is the subject this appeal. He alleged that prison officials opened his legal mail multiple times in violation of K.A.R. 44-12-601(c)(2) and the First Amendment to the United States Constitution. Bohanon noted that he had exhausted all administrative remedies, and, for relief, he should be discharged from the unlawful portion of his imprisonment. He also explained that because one could reasonably infer that whoever opened the mail also read it, then his right to privacy was also implicated.

The district court summarily dismissed Bohanon's petition with a cursory order that stated simply:

"Plaintiff alleges that on 11-5-20 he received a letter from KDOC Legal Counsel (Legal Mail) that had been opened not in his presence with the notation that it had been opened in error. Plaintiff does not allege facts that show the incident was not an accident. KAR 44-12-601(a)(2) does not make violation of the regulation an intentional violation of constitutional rights."

Bohanon timely moved for reconsideration in which he reiterated his concern that the HCF mailroom repeatedly and intentionally opened his legal mail. He also noted that the district court's order cited the incorrect subsection of the administrative regulation. The order cited K.A.R. 44-12-601(a)(2), which defines "Censor," "Inspect," and "Read," while Bohanon's petition appropriately referenced K.A.R. 44-12-601(c)(2), which regulates legal mail. See K.A.R. 44-12-601(a)(2); K.A.R. 44-12-601(c)(2). Finally, Bohanon asserted that the district court's order failed to address his privacy argument.

Bohanon filed a timely notice of appeal but advised that his motion for reconsideration was pending.

A different district court judge held a hearing on Bohanon's motion to reconsider and Bohanon attended pro se. Bohanon primarily argued that the first judge's order cited the wrong subsection of the regulation. The court denied Bohanon's motion for reconsideration with yet another cursory order:

"Petitioner's motion to reconsider doesn't add anything additional to petitioner's original arguments. The Court does not see any reason offered to justify changing the order previously entered by the judge who earlier heard and ruled on petitioner's case. The motion to reconsider is denied."

Bohanon did not file a new notice of appeal in response to the court's denial of his motion.

4

We must now determine whether the district court erred when it summarily denied Bohanon's K.S.A. 60-1501 motion.

ANALYSIS

DID THE DISTRICT COURT ERR IN SUMMARILY DISMISSING BOHANON'S K.S.A. 60-1501 PETITION?

Bohannon argues the district court erred in summarily dismissing his K.S.A. 60-1501 petition because he alleged a constitutional violation occurred when prison officials repeatedly opened his legal mail outside his presence. He contends a hearing was necessary to thoroughly resolve the matter. We pause to clarify that the order denying Bohanon's motion for reconsideration is not properly before this court as he did not file a notice of appeal from that ruling. See *Ponds v. State*, 56 Kan. App. 2d 743, 754, 437 P.3d 85 (2019) (holding that when a timely notice of appeal is filed while there is a timely motion for reconsideration before the district court, this court may review the district court decision summarily denying a habeas petition, but it may not review the district court's ruling on the motion for reconsideration unless the appellant filed a separate notice of appeal regarding the ruling on that motion).

*Standard of Review*

This court exercises unlimited review over a summary dismissal of a K.S.A. 60-1501 petition. *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009). Additionally, this court reviews due process claims de novo. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 (2001).

*The Petition*

K.S.A. 60-1501 petitions allow inmates to "attack the conditions of [their] confinement." *Shepherd v. Davies*, 14 Kan. App. 2d 333, 335, 789 P.2d 1190 (1990). K.S.A. 2020 Supp. 60-1503(a) provides:

> "(a) *Issuance*. The petition shall be presented promptly to a judge in the district court in accordance with the procedure of the court for the assignment of court business. The petition shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the petition and any exhibits attached thereto that the plaintiff is not entitled to relief in the district court, the petition shall be dissolved at the cost of the plaintiff. If the judge finds that the plaintiff may be entitled to relief, the judge shall issue the writ and order the person to whom the writ is directed to file an answer within the period of time fixed by the court or to take such other action as the judge deems appropriate."

Summary denial of such petitions is appropriate when the allegations are not "of shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson*, 289 Kan. at 648.

> "Summary dismissal is appropriate if, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from incontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists." 289 Kan. at 648-49.

On appeal from the summary denial of a K.S.A. 60-1501 petition, our task is to "accept as true the allegations in [the] petition in order to determine if the facts alleged and their reasonable inferences state a claim for relief." *Schuyler v. Roberts*, 285 Kan. 677, 679, 175 P.3d 259 (2008). "'The court must determine whether the alleged facts and all their inferences state a claim, not only on the theories which the plaintiff espouses, but on any possible theory. [Citations omitted.]'" *Hill v. Simmons*, 33 Kan. App. 2d 318, 320,

6

101 P.3d 1286 (2004). Additionally, reviewing courts "broadly construe" pro se petitions. *Laubach v. Roberts*, 32 Kan. App. 2d 863, 868, 90 P.3d 961 (2004).

Accordingly, the first step in this court's analysis is to accept as true Bohanon's allegations that (1) HCF mailroom staff opened and read his legal mail outside his presence on November 5, 2020, and (2) that this occurrence was not an isolated incident, but rather had "happened [too] many times." The record reflects that the unit team conceded that the November 5th incident occurred and issued an apology to Bohanon as a result.

Assuming these allegations are true, we move on to the second analytical step and determine whether these facts give rise to a claim for relief. Our analysis is hampered somewhat by Bohanon's failure to clearly articulate a specific constitutional argument. He simply contends that "his constitutional rights were violated when the State by the Department of Corrections opened and read his legal mail outside of his presence." Admittedly, his lack of specificity may be attributable, in part, to the district court's perfunctory dismissal of his petition. That is, the district court did not address the First Amendment or Fourth Amendment/privacy claims Bohanon presented in his petition. Rather, it merely noted that a violation of the relevant regulation was not "an intentional violation of constitutional rights." The district court also confined its order to the November 5th occurrence even though Bohanon's petition alleged that the incident was part of a larger pattern of behavior. Bohanon cannot provide a detailed examination of the court's reasoning in its rejection of the issues raised if it neglected to conduct a comprehensive analysis of those issues. In any event, these omissions are enough to provide a general foundation for Bohanon's argument that a hearing was warranted to fully analyze the merits of his claims.

Before delving into the issues before us, it is important to note that appellees contend the "[p]rison officials were within their appropriate framework in how they

administered the facility, including the mailroom," and that such officials are typically afforded wide latitude in the operation of prisons. Appellees direct our attention to *Levier v. State*, 209 Kan. 442, 451, 497 P.2d 265 (1972), which explains:

> "Maintenance and administration of penal institutions are executive functions and it has been said that before courts will interfere the institutional treatment must be of such a nature as to clearly infringe upon constitutional rights, be of such character or consequence as to shock general conscience or be intolerable in fundamental fairness."

Even so, appellees' assertions are not responsive to Bohanon's arguments. Collectively, Bohanon's K.S.A. 60-1501 petition and brief on appeal outline three separate theories for why the alleged activities of the HCF mailroom amount to constitutional violations. First, and most clearly explained in his brief, is a procedural due process claim. Procedural due process claims involve two distinct steps. First, we must determine whether the State deprived Bohanon "of life, liberty, or property." *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 (2005). Stated another way, he must show that his property or liberty interests were implicated when the HCF mailroom staff opened his legal mail outside his presence. See *Stano v. Pryor*, 52 Kan. App. 2d 679, 682, 372 P.3d 427 (2016) ("In order to establish a claim for a violation of due process in a proceeding pursuant to K.S.A. 2015 Supp. 60-1501, an inmate must establish a deprivation of a recognized liberty or property interest."). Second, we must "consider the nature and extent of the process which was due." *Hogue*, 279 Kan. at 851.

Turning to the first step, Bohanon references liberty interests when discussing procedural due process. While appellees correctly note that Bohannon "has identified no liberty interest" in his brief, our obligation is to look to whether his *petition* alleged facts and inferences that state a claim implicating a liberty interest. *Hill*, 33 Kan. App. 2d at 320. In *Chubb v. Sullivan*, 50 Kan. App. 2d 419, 432, 330 P.3d 423 (2014), a panel of this court explained that "[t]he United States Supreme Court has recognized the difficulty in defining a liberty interest under the Fourteenth Amendment Due Process Clause 'with

exactness.'" Though the parameters are unclear, a liberty interest may arise from either the Due Process Clause of the Fourteenth Amendment or state law. *Chubb*, 50 Kan. App. 2d at 427. A liberty interest may also arise from a regulation. *Amos v. Nelson*, 260 Kan. 652, 666, 923 P.2d 1014 (1996); *Schuyler v. Roberts*, 36 Kan. App. 2d 388, 391, 139 P.3d 781 (2006). In that vein, Bohanon suggests that a liberty interest arose in relation to K.A.R. 44-12-601(c)(2). The regulation provides:

> "Incoming mail clearly identified as legal, official, or privileged mail shall be opened only in the inmate's presence. This mail shall be inspected for contraband but shall not be read or censored, unless authorized by the warden based upon a documented previous abuse of the right or other good cause."

It appears this is also how the district court interpreted Bohanon's argument. In its summary dismissal of the petition, it concluded that "KAR 44-12601(a)(2) does not make violation of the regulation an intentional violation of constitutional rights."

We derive a bit of guidance from *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). In that case, the United States Supreme Court outlined the appropriate test for determining whether a regulation gives rise to a liberty interest. In so doing, it took a step back from previous caselaw that focused on whether the language of the regulation was mandatory and instead noted:

> "[Liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [citations omitted], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.

This court adopted the *Sandin* test in *Davis v. Finney*, 21 Kan. App. 2d 547, 558-59, 902 P.2d 498 (1995). Then, one year later, the Kansas Supreme Court adopted the *Finney* court's articulation of the *Sandin* principle in *Amos*. 260 Kan. at 666. See also

9

*Brown v. Cline*, No. 107,983, 2012 WL 53292191, at *1-3 (Kan. App. 2012) (unpublished opinion) (explaining the historical development of *Sandin* and subsequent Kansas caselaw).

Though Bohanon does not identify a Kansas case applying this test to a violation of K.A.R. 44-12-601(c)(1) specifically, one panel of this court has concluded that a violation of the legal mail regulations implicates a protected liberty interest in the context of outgoing mail. In *Davis v. Cline*, No. 118, 778, 2018 WL 3795958 (Kan. App. 2018) (unpublished opinion), this court evaluated a district court's summary dismissal of a K.S.A. 60-1501 petition that alleged prison officials violated Davis' Fourteenth Amendment due process rights by impairing his ability to send out legal mail in violation of K.A.R. 44-12-601(f)(3) (2017 Supp.). That regulation conveys that indigent inmates must not be prevented from sending out legal mail simply because they cannot afford the postage. This court reversed the district court and explained that Davis "had a protected liberty interest in sending legal mail on credit, and a right to rely on prison officials not using their discretion to impair that liberty interest." 2018 WL 3795958, at *4.

Though the factual foundation for the issue in *Cline* differs somewhat from the claim we are tasked with deciding in that we are focused on incoming mail, it still offers guidance as it identifies "a protected liberty interest to rely on the mail regulations." 2018 WL 3795958, at *4. Specifically, the *Cline* court expressed concern that interference with legal mail affected an inmate's right of access to the courts. 2018 WL 3795958, at *5; see also *Abbott v. Avis*, No. 92-4076, 1992 WL 403113, at *2 (10th Cir. 1992) (unpublished opinion) ("Construing Abbott's brief on appeal broadly, the only legally cognizable constitutional claim it presents is the allegation that defendants' failure to follow their policies when they confiscated, handled, and read his legal mail unreasonably interfered with his right of access to the courts."). Thus, *Cline* leaves open the possibility that under the facts alleged by Bohanon, there is a potentially cognizable procedural due process issue that the district court improperly rejected in summarily denying Bohanon's petition.

10

See K.S.A. 2020 Supp. 60-1503(a) (providing the district court judge shall issue a writ if the petitioner "*may* be entitled to relief"). As a result, Bohanon's case must be remanded to the district court for a determination of whether the HCF mailroom's violations of K.A.R. 44-12-601(c)(2) violated his right to procedural due process.

We note that Bohanon also sought to allege that a First Amendment violation resulted from the mailroom incidents. We qualify it as merely an attempt because it only appears as a single sentence in his recitation of the facts. He does not provide us with a corresponding argument in the analytical portion of his brief. That said, as noted above, this court's review involves considering whether the allegations in the *petition* potentially support any theory for relief. *Hill*, 33 Kan. App. 2d at 320.

To that point, Bohanon highlights four cases in which inmates lodged successful First Amendment challenges after their legal mail was opened. See *Reneer v. Sewell*, 975 F.2d 258 (6th Cir. 1992) (reversing a district court's decision to grant defendant's motion for summary judgment when Reneer alleged the defendant read his legal mail causing a chilling effect to his free speech); *Hinderliter v. Hungerford*, 814 F. Supp. 66 (D. Kan. 1993) (rejecting defendant's motion for summary judgment in a 42 U.S.C. § 1983 claim alleging Hinderliter's legal mail was opened outside his presence); *Proudfoot v. Williams*, 803 F. Supp. 1048 (E.D. Pa. 1992) (finding violation to Proudfoot's constitutionally guaranteed access to the courts when a prison official opened and potentially read legal mail during a cell search); *Burt v. Carlson*, 752 F. Supp. 346 (C.D. Cal. 1990) (rejecting defendant's summary judgment motion on a claim related to opening legal mail).

Moreover, in *Bohanon v. Keen*, No. 123,675, 2021 WL 4226082 (Kan. App. 2021) (unpublished opinion), this court resolved another case brought by Bohanon in which he also alleged that prison officials violated his constitutional rights by opening legal mail outside his presence in February 2020. Specifically, he likewise argued the "incident was

part of a systemic practice" and "officials had violated his rights under the First Amendment to the United States Constitution . . . ." 2021 WL 4226082, at *1.

The district court denied Bohanon's petition after classifying it as a limited action claim under Chapter 61, a finding this court rejected. The panel clarified that the petition instead met the criteria of a K.S.A. 60-1501 petition. 2021 WL 4226082, at *2. After citing several Circuit Courts of Appeals decisions finding First Amendment violations in similar circumstances, the panel remanded Bohanon's case to the district court for greater consideration of the issue. 2021 WL 4226082, at *3. We find ourselves staring down that road once more.

The district court erred when it summarily denied Bohanon's petition in his most recent case because, like his earlier case, he alleged a pattern of HCF officials opening his legal mail outside his presence. Bohanon thus satisfied his burden to show a plausible claim for relief because prison officials repeatedly opened and read his incoming legal mail in violation of his First Amendment rights. See K.S.A. 2020 Supp. 60-1503(a).

We recognize that different conclusions have been reached under somewhat similar fact patterns. See *Bloom v. Muckenthaler,* 34 Kan. App. 2d 603, 609-10, 127 P.3d 342 (2005) (rejecting a First Amendment argument when the petitioner only alleged "one piece of legal mail was opened before he received it" because it "was not from a member of the bar" and "[e]ven if the letter was legal mail under the administrative regulations, this one incident in itself does not support an action for breach of Bloom's constitutional rights"); *Astorga v. Leavenworth County Sheriff,* No. 122,387, 2020 WL 6533282, at *10 (Kan. App. 2020) (unpublished opinion) (opening one piece of legal mail outside inmate's presence not a constitutional violation). But Bohanon's case emerges as the wheat among the chaff because it involves a repetitive practice rather than an isolated incident.

12

The final constitutional theory which Bohanon relies on is a Fourth Amendment violation. In his petition, he noted that his right to privacy was violated based off the inference that HCF staff also read his legal mail once it was opened. On appeal, Bohanon's brief does not flesh out this argument, he simply presents us with one case addressing Fourth Amendment privacy arguments. Our research into this matter reveals that several other courts have contemplated this issue and found the arguments unpersuasive. See *Miller v. Johnson*, No. 6:20cv586, 2020 WL 8361989, at *3 (E.D. Tex. 2020) (unpublished opinion); *Winding v. Switzer*, No. 5:16cv4-KS-MTP, 2016 WL 1248957, at *3 (S.D. Miss. 2016) (unpublished opinion); *Horacek v. Grey*, No. 1:09-CV-96, 2010 WL 914819, at *5 (W.D. Mich. 2010) (unpublished opinion); *Thomas v. Kramer*, No. 2:08-CV-0544 DAE LEK, 2009 WL 937272, at *2 (E.D. Cal. 2009) (unpublished opinion); *Hall v. Chester*, No. 08-3235-SAC, 2008 WL 4657279, at *6 (D. Kan. 2008) (unpublished opinion) ("Prison officials do not violate an inmate's Fourth Amendment rights by inspecting the inmate's legal mail, and are not required to have probable cause to search incoming mail."). As a result, we decline to find that Bohanon's petition stated a successful claim for relief under the Fourth Amendment.

In his petition, Bohanon alleged "continuing mistreatment of a constitutional stature." The factual allegations he offered in support of that claim may support procedural due process and First Amendment claims for relief. See *Johnson*, 289 Kan. at 648. Thus, the district court erred when it neglected to issue a writ of habeas corpus, appoint counsel, order the Respondent to file an answer, and conduct a hearing to resolve Bohanon's claim. We reverse the summary denial of Bohanon's petition so that this course of action can now be pursued.

Reversed and remanded with directions.