No. 79,734
No. 79,735
No. 79,736
No. 79,860
No. 79,960

TERRY L. VINSON, *Appellant*, v. DAVID R. MCKUNE, *et al.*, *Appellees.*

JOHN EDWARDS, *Appellant*, v. CHARLES E. SIMMONS, *et al.*, *Appellees.*

WALTER MYRICK, *Appellant*, v. SHIRLEY HENSLEY, *et al.*, *Appellees.*

JOSE ROJAS, *Appellant*, v. CHARLES E. SIMMONS, *et al.*, *Appellees.*

PETER E. SPENCER, *Appellant*, v. CHARLES E. SIMMONS, *et al.*, *Appellees.*

(960 P.2d 222)

Opinion filed June 5, 1998.

*Charles J. Cavenee*, of Legal Services for Prisoners, Inc., of Lansing, argued the cause and was on the brief for appellants.

*Jose Rojas*, pro se, was on the brief for appellant.

*Jeff Cowger*, special assistant attorney general, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Petitioners Terry L. Vinson, John Edwards, Walter Myrick, Jose Rojas, and Peter Spencer, all inmates at the Lansing Correctional Facility, appeal from the denial of their habeas corpus petitions. They contend that Internal Management Policies and Procedures (IMPP) 11-101 issued by the Secretary of Corrections January 1, 1996, as applied in their respective cases, violates their right to due process and constitutes an ex post facto application of law under the United States Constitution. They also contend that IMPP 11-101 is void for lack of publication under K.S.A. 77-415 *et seq.* We affirm.

IMPP 11-101 is an internal management policy and procedure concerning offender privileges and incentives. According to the stated policy in IMPP 11-101, "[t]he Kansas Department of Corrections shall implement a comprehensive system of earnable offender privileges which will provide an effective means of managing the offender population and reinforcing constructive behavioral changes in offenders." Under IMPP 11-101, inmates can earn certain privileges, including television ownership, handicrafts, participation in organizations, use of outside funds, canteen expenditures, property, incentive pay, and visitation. There are several levels of privileges. At Level I, the level at which petitioners were placed, the inmate may not have a personal television but has access to general television. Inmates at Level I are limited in activities, have limited expenditures at the canteen up to $20, may earn up to 60¢ per day in incentive pay, and may receive visitors from immediate family. At Level III, the highest level for inmates, the inmate may purchase a personal television, spend up to $140

in the canteen on a more extensive list of items, and may have any approved visitor.

In order to move from level to level, the inmate must remain free of Class I or Class II disciplinary reports and demonstrate a willingness to participate in recommended programs and/or work assignments for a full review cycle of a minimum of 120 days. An inmate may lose levels for disciplinary offenses and is automatically reduced to Level I in the event the inmate is terminated from a work program for cause, refuses to participate in a recommended program, commits felony offenses, or has serious disciplinary offenses.

When an inmate loses levels, property items which the inmate is no longer authorized to have are removed from the facility. The first time an inmate is moved from Level II or III to Level I, unauthorized items purchased by the inmate at the canteen such as televisions, sound equipment, and large appliances are stored for the inmate at the facility and returned to the inmate when the inmate advances back to a level at which they are authorized. However, if the inmate is returned to Level I a second time, or fails to advance to Level II at the earliest possible time, these items are removed from the facility.

When an item is removed from the facility, the inmate has the choice of having the item mailed to an address of the inmate's choosing at the inmate's expense or, with the approval of the warden at the expense of the facility, donating the item to charity, having the property picked up by an authorized person, or having the property delivered to a local address by the facility upon the approval of the warden. At the time IMPP 11-101 was implemented on January 1, 1996, all inmates currently incarcerated were placed at Level III, the highest level available. At this level, the inmate enjoyed the same privileges that existed prior to implementation of IMPP 11-101. Petitioners were reduced to Level I for certain violations of prison rules, hence their appeal.

## DUE PROCESS

One of the issues raised by the petitioners is that the application of IMPP 11-101 to their respective cases denies them of due pro-

cess of law under the Fourteenth Amendment to the United States Constitution. We have resolved this issue adversely to the petitioners in our decision of *Stansbury v. Hannigan*, 265 Kan. 404, 960 P.2d 227 (1998). In accordance with the reasoning of that opinion, application of IMPP 11-101 to these petitioners does not implicate the Due Process Clause.

## EX POST FACTO

The petitioners also contend that the incentive level system as applied to each of them imposes additional punishment and is an ex post facto application of law which violates the United States Constitution. U.S. Const., art. I, § 9, cl. 3 and § 10, cl. 1 provide that no state shall pass any law which "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325-26, 18 L. Ed. 356 (1867).

Our most recent discussion of ex post facto legislation occurred in *Stansbury*, where we discussed application of the Ex Post Facto Clause of the United States Constitution in relation to Department of Corrections regulations involving "good time credits." In that case, we noted that in order for a law to be considered ex post facto, two critical elements must be present: The law must be retrospective, applying to events occurring before its enactment, and it must alter the definition of criminal conduct or increase the penalty by which a crime is punishable. 265 Kan. 404, Syl. ¶ 2. See *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504, 131 L. Ed. 2d 588, 115 S. Ct. 1597 (1995); *Weaver v. Graham*, 450 U.S. 24, 29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981). We quoted the United States Supreme Court's decision in *Weaver* for the following proposition:

"Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." 450 U.S. at 30-31.

The provisions of IMPP 11-101, as applied to the petitioners in their respective cases, do not increase punishment beyond what was prescribed when the crime was consummated. Depending upon the conduct of the inmate, IMPP 11-101 may affect the conditions upon which the inmate's sentence is served, but not to the extent that its effect constitutes a significant or atypical departure from the normal rigors of incarceration. See *Stansbury*, 265 Kan. 404. Therefore, IMPP 11-101 is not "retrospective and more onerous than the law in effect on the date of the offense." The Department of Corrections has the right as well as the statutory obligation to maintain good government within the Kansas corrections system. To this end, the department may, as it has done in this case, provide for security, privileges, and incentives to accomplish such an end consistent with the policy of the legislature expressed in K.S.A. 75-5201. IMPP 11-101 seeks to accomplish such results. Nothing contained within the IMPP implicates due process, and the provisions apply to all inmates. As such, IMPP 11-101 does not increase the penalty after the offense and does not implicate the Ex Post Facto Clause of the United States Constitution. Internal management of prisons is left to the sound discretion of the Department of Corrections, through the Secretary of Corrections and this court should not interfere where liberty or property interests are not involved. See *Sandin v. Conner*, 515 U.S. 472, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995).

## PUBLICATION

A final argument advanced by the petitioners is that IMPP 11-101 is invalid because it was not correctly adopted or published in the Kansas Register. The petitioners contend that IMPP 11-101 fits the definition of a rule and regulation within the provisions of K.S.A. 77-415 *et seq*. and must be adopted in accordance with such provision which requires publication in the Kansas Register. Because IMPP 11-101 was not published, petitioners argue that it was invalid pursuant to K.S.A. 77-425, which states that any regulation not published as required shall be of no force or effect.

K.S.A. 77-415 *et seq*. require, among other specific acts set forth, publication of a rule and regulation in the Kansas Register before

the rule and regulation shall have the force and effect of law in this state. K.S.A. 77-415 (4) defines a rule and regulation

"and words of like effect [to] mean a standard, statement of policy or general order, including amendments or revocations thereof, of general application and having the effect of law, issued or adopted by a state agency to implement or interpret legislation enforced or administered by such state agency or to govern the organization or procedure of such state agency."

State agency means "any officer, department, . . . or institution of this state, except the judicial and legislative branches, which is authorized by law to promulgate rules and regulations concerning the administration, enforcement or interpretation of any law of this state." K.S.A. 77-415(1).

The Department of Corrections is established by the provisions of K.S.A. 75-5203 and its chief executive officer, the Secretary of Corrections, is appointed by the Governor subject to statutory requirements. Broad powers and duties are conferred by law upon the Secretary of Corrections so that the following purpose of the legislature may be implemented:

"The legislative purpose in enacting this act shall be deemed to be establishment of a policy of treatment of persons convicted of felonies in this state by placing maximum emphasis on rehabilitation of each such person while in the custody of the state or under the jurisdiction of the courts of the state, consistent with the interests and safety of the public, so that a maximum of persons so convicted may be returned to private life in the communities of the state with improved work habits, education, mental and physical health and attitudes necessary to become and remain useful and self-reliant citizens. It is the intent of the legislature that judges, the secretary of corrections, his or her agents, subordinates and employees and the Kansas adult authority, its agents, subordinates and employees will construe and apply this act and acts of which it is amendatory or supplemental liberally to rehabilitate, train, treat, educate and prepare persons convicted of felony in this state for entry or reentry into the social and economic system of the community upon leaving this custody of these state agencies and officers." K.S.A. 75-5201.

K.S.A. 75-5210 concerns the treatment of inmates and provides for the adoption of rules and regulations for the maintenance of good order and discipline within the corrections system, including the establishment of promotional rewards and punishments. Thus,

IMPP 11-101 implements the statutory authorization granted in K.S.A. 75-5210.

However, while it may readily be observed that the Department of Corrections is a state agency defined in K.S.A. 77-415, and that IMPP 11-101 fits the definition of a rule and regulation set forth in K.S.A. 77-415(4), certain rules and regulations are excluded from publishing requirements under the provisions of K.S.A. 77-415(4). These include "any rule and regulation which . . . [r]elates to the internal management or organization of the agency and does not affect private rights or interest[s]." K.S.A. 77-415(4)(a). Other exclusions most generally include specific state agencies of this State and generally relate to internal operating procedures. See K.S.A. 77-415(4)(b) through (r).

IMPP 11-101 relates primarily to privileges and incentives of persons committed to the institutional care of the Secretary of Corrections. As we found in *Stansbury*, 265 Kan. 404, it affects no liberty or property rights. Therefore, IMPP 11-101 fits within the exception to the publication requirement found in K.S.A. 77-415(4)(a).

However, even if rules and regulations are not subject to the publication requirement of 77-415, under the provisions of 77-415(4)(a), they are still subject to K.S.A. 77-421a, which states that such rules and regulations "shall be adopted in the manner prescribed by K.S.A. 77-421 and amendments thereto after notice has been given and a hearing held in the manner prescribed by K.S.A. 77-421 and amendments thereto." K.S.A. 77-421 requires, among other things, publication of rules and regulations in the Kansas register.

Once again, however, K.S.A. 77-421a provides for the following exception: "This section shall not apply to orders issued by directors of correctional institutions under K.S.A. 75-5256." The full import of this exception must be read in pari materia with the provisions of K.S.A. 75-5256, which provides in part:

"(a) The warden of each correctional institution may issue orders subject to the provisions of law and the rules and regulations adopted by the secretary of corrections, as the warden may deem necessary for the government of the correctional institution and the enforcement of discipline therein.

"(b) All rules and regulations or orders for the government of a correctional institution and the enforcement of discipline therein adopted or issued by the secretary of corrections and all orders issued by the warden of the correction institution shall be published and made available to all inmates, other than rules and regulations and orders relating to emergency or security procedures. Every order issued by the warden of a correctional institution shall be effective until rescinded or amended by the warden or until disapproved by the secretary."

K.S.A. 75-5210 provides:

"(f) The secretary shall adopt rules and regulations for the maintenance of good order and discipline in the correctional institutions, including procedures for dealing with violations. Disciplinary rules and regulations may provide a system of punishment including segregation, forfeitures of good time earned, fines, extra work, loss of privileges, restrictions and payment of restitution. . . .

"(g) A copy of the rules and regulations adopted pursuant to subsection (f) shall be provided to each inmate. Other rules and regulations of the secretary which are required to be published pursuant to K.S.A. 77-415 through 77-437, and amendments thereto, shall be made available to inmates by placing a copy in the inmate library at the institution or by some other means providing reasonable accessibility to inmates."

IMPP 11-101 implements a "comprehensive system of earnable offender privileges which will provide an effective means of managing the offender population and reinforcing constructive behavioral changes in offenders." The issuance of this IMPP is in accord with the purposes of the legislature set forth in K.S.A. 75-5201 so that consistent with public safety, a "maximum of persons so convicted may be returned to private life in the communities of the state with improved work habits, education, mental and physical health and attitudes necessary to become and remain useful and self-reliant citizens."

IMPP 11-101 constitutes an order issued by the directors of correctional institutions under K.S.A. 75-5256 and is, therefore, exempt from the provisions relating to adoption of rules and regulations contained in K.S.A. 77-421a. K.S.A. 75-5210(g) acknowledges a difference between the IMPP's issued by the Secretary of Corrections, which are required to be disseminated to each inmate, and other rules and regulations of the Secretary which are required to be published pursuant to K.S.A. 77-415 *et seq.* IMPP 11-101 concerns internal management under the provisions of K.S.A. 75-

5256 for the government of the correctional institution, and as such it is simply required to be provided to each inmate. See K.S.A. 75-5210(g).

We note that most rules and regulations adopted by the Secretary of Corrections require compliance with the provisions of K.S.A. 77-415 *et seq.* However, the regulations in this case deal exclusively with privileges and incentives of those persons in custody of the Department of Corrections. We conclude that while IMPP 11-101 may fit the definition of a rule and regulation, it is exempt from publication under K.S.A. 77-415(4) and K.S.A. 77-421a. The provision in K.S.A. 77-425 that any rule and regulation not filed and published as required by this act shall be of no force or effect does not apply to IMPP 11-101.

Affirmed.