(101 P.3d 1286)
No. 91,754

ROLAND K. HILL, *Appellant*, v. CHARLES E. SIMMONS, *et al.*,
*Appellee*.

Opinion filed December 10, 2004.

*Roland K. Hill*, appellant pro se.

*Julie St. Peter*, of the Kansas Department of Corrections, for the appellee.

Before GREENE, P.J., PIERRON and MALONE, JJ.

PIERRON, J.: Roland K. Hill appeals the district court's dismissal of his K.S.A. 2003 Supp. 60-1501 petition.

Hill is an inmate at the El Dorado Correctional Facility (EDCF). While confined in prison, Hill received seven disciplinary reports for lewd acts and numerous other documented inappropriate sexual behaviors. Accordingly, Hill has been managed as a sex offender while confined at EDCF.

Internal Management Policy and Procedure (IMPP) 11-115 provides that inmates who are determined to be sex offenders, as defined by the policy, are not allowed to have sexually explicit materials in their possession. Because Hill was determined to be a sex offender due to his custodial behavior, he has been denied the right to have sexually explicit materials in his possession while confined at EDCF.

Hill filed a grievance regarding his management under IMPP 11-115. The response from both his unit team manager and the Secretary of Corrections' designee informed Hill of the reasons he was classified as a sex offender and that the policy served the correctional interests of safety, security, management, and control of the facility and provided for the safety of the community in general.

Hill filed a petition for writ of habeas corpus with the district court. Following a summary review, the court determined that Hill had failed to state a claim upon which relief could be granted and denied his petition. Hill timely appealed from this decision.

Hill argues that IMPP 11-115 violates the Ex Post Facto Clause, as well as his First Amendment and 14th Amendment due process rights. He contends the district court's decision to summarily dis-

miss his petition without holding a hearing was a violation of his due process rights.

Kansas courts have held:

"Upon review of a district court's order dismissing a petition for failure to state a claim upon which relief can be granted, appellate courts are required to accept the facts alleged by the plaintiff as true. The court must determine whether the alleged facts and all their inferences state a claim, not only on the theories which the plaintiff espouses, but on any possible theory. [Citation omitted.]" *Foy v. Taylor*, 26 Kan. App. 2d 222, 223, 985 P.2d 1172, *rev. denied* 268 Kan. 886 (1999).

Furthermore, " '[t]o avoid summary dismissal of a K.S.A. 60-1501 petition, allegations must be made of shocking and intolerable conduct or continuing mistreatment of a constitutional stature.' [Citation omitted.]" *Bankes v. Simmons*, 265 Kan. 341, 349, 963 P.2d 412, *cert. denied* 525 U.S. 1060 (1998); see also *Amos v. Simmons*, 32 Kan. App. 2d 366, 367, 82 P.3d 859, *rev. denied* 277 Kan. 923 (2004).

Hill first argues that the implementation of IMPP 11-115 is a violation of the Ex Post Facto Clause. Kansas courts have held that " 'in order for a law to be considered ex post facto, two critical elements must be present: The law must be retrospective, applying to events occurring before its enactment, and it must alter the definition of criminal conduct or increase the penalty by which a crime is punishable.' [Citations omitted.]" *Sammons v. Simmons*, 267 Kan. 155, 162, 976 P.2d 505 (1999).

In *Sammons*, the petitioner challenged another prison policy, IMPP 11-101, as a violation of the Ex Post Facto Clause. That policy provided that an inmate's privileges could be reduced based upon the disciplinary conduct and custodial behavior of the inmate. The court reasoned that IMPP 11-101 was not a violation of the Ex Post Facto Clause:

" 'The provisions of IMPP 11-101, as applied to the petitioners in their respective cases, do not increase punishment beyond what was prescribed when the crime was consummated. Depending upon the conduct of the inmate, IMPP 11-101 may affect the conditions upon which the inmate's sentence is served, but not to the extent that its effect constitutes a significant or atypical departure from the normal rigors of incarceration. [Citation omitted.] Therefore, IMPP 11-101 is not "retrospective and more onerous than the law in effect on the date of the

offense." ' " 267 Kan. at 162 (quoting *Vinson v. McKune*, 265 Kan. 422, 425-26, 960 P.2d 222 [1998]).

Similarly, in this case, IMPP 11-115 provides that an inmate may be managed as a sex offender while confined in prison and while on postrelease supervision, based on the inmate's conduct while in prison. The policy defines this type of sex offender based on custodial behavior as "[a]n offender who, while not having been convicted of a sex offense, has nevertheless, while in the Department's custody, engaged in sexually motivated behavior prohibited by Department rules as established through Departmental disciplinary or administrative segregation proceedings." The Kansas Department of Corrections (DOC) determined that Hill's conduct while in custody, which led to seven disciplinary reports for lewd acts and numerous other documented inappropriate sexual behaviors, put Hill in this category of individuals who should be managed under IMPP 11-115.

As in *Sammons*, application of IMPP 11-115 in this case is not retrospective in nature and does not increase the penalty Hill is to serve. The policy is simply an administrative measure designed to enhance security of the facility and the rehabilitation of sex offenders. Hill's sentence was not extended by the application of IMPP 11-115. Rather, due to his conduct while in prison, he was identified as a sex offender under IMPP 11-115 and was placed in a treatment program to assist in his rehabilitation. The policy applies to Hill's conduct while in prison, which occurred after IMPP 11-115 was in effect.

While certain restrictions also apply to Hill, according to this policy these restrictions do not rise to the level of a significant or atypical departure from the normal rigors of incarceration. In fact, K.A.R. 44-12-313 prohibits all inmates from possessing such obscene materials. Therefore, IMPP 11-115 is not retrospective and more onerous than the law in effect on the date of the offense. As such, IMPP 11-115 is not a violation of the Ex Post Facto Clause.

Next, Hill asserts that IMPP 11-115 is a violation of his 14th Amendment due process and First Amendment rights under the United States Constitution. The United States Supreme Court has

determined that regulations that affect the sending of publications to prisoners must be analyzed under the standard set forth in *Turner v. Safley*, 482 U.S. at 89, and are valid if they are " 'reasonably related to legitimate penological interests.' " *Thornburgh v. Abbott*, 490 U.S. 401, 409-10, 104 L. Ed. 2d 459, 109 S. Ct. 1874 (1989). The Court recognized that prison officials are due considerable deference in regulating the balance between an inmate's First Amendment right to access materials and the need of prison officials for security, control, and safe management of the prison. *Thornburgh*, 490 U.S. at 416.

*Turner* identifies several factors that are relevant to the determination of whether a restriction on an inmate's right to such material is reasonably related to a penological interest. The first *Turner* factor examines whether the governmental objective underlying the regulation at issue is legitimate and neutral and whether the regulation is rationally related to that objective. 482 U.S. at 89-90.

In response to Hill's grievance, the DOC stated "[t]he decision to withhold inappropriate materials from sex offenders serves correctional interests pertaining to safety, security, management, and control of the prison, and for the community in general." The DOC cited specific instances of sexually inappropriate behavior by Hill and expressed the belief that the possession of any sexually explicit materials could encourage continued conduct that is inappropriate, unlawful, and counter to his progress toward rehabilitation. Consequently, the DOC has established that IMPP 11-115 is based on a legitimate objective, security and rehabilitation, and rationally related to that objective.

Arguably, IMPP 11-115 is not neutral because it is based on the content of the material as being sexually explicit. However, "the Court's reference to 'neutrality' in *Turner* was intended to go no further than its requirement in *Martinez* that 'the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression.' [Citation omitted]." *Thornburgh*, 490 U.S. at 415. Here, the department is drawing distinctions between publications, not solely for the reason of suppressing the inmate's freedom of expression re-

garding sexually explicit materials, but on the basis of their potential implications for prison security. As such, IMPP 11-115 is neutral for purposes of the *Turner* test. See *Thornburgh*, 490 U.S. at 415-16. Consequently, the first *Turner* factor is satisfied.

The second *Turner* factor is whether there are alternative means available to the inmate, allowing the inmate to exercise his or her freedom of expression. 482 U.S. at 90. Hill presents no real argument regarding this issue. Further, IMPP 11-115 still allows a wide variety of publications to be sent, received, and read by inmates. Only materials identified as sexually explicit are restricted. Therefore, this factor is also satisfied.

The third factor considers the effect that the accommodation of the asserted right would have on guards and other inmates. *Turner*, 482 U.S. at 90. Here, the DOC determined that accommodating Hill's right to possess sexually explicit material would come at the expense of significantly less liberty and safety for other inmates and guards, as well as the general community. According to the *Turner* court, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." 482 U.S. at 90. Consequently, this court gives deference to the DOC's informed determination that allowing Hill to possess sexually explicit materials could significantly diminish the liberty, safety, and security of others at the prison.

Finally, the absence of a ready alternative is evidence of the reasonableness of a prison regulation. The regulation cannot be an exaggerated response to prison concerns. *Turner*, 482 U.S. at 90. Again, Hill presents no evidence or arguments to support the contention that the restrictions of IMPP 11-115 are an exaggerated response. Based on the evidence presented of Hill's previous instances of sexually motivated behavior toward prison staff, the restriction of sexually explicit material appears to be a reasonable response. Consequently, all four of the *Turner* factors appear to be met in this case. Therefore, the restrictions placed on Hill by IMPP 11-115 are reasonable and there is a valid, rational connection between the regulation and legitimate penological interests.

As such, Hill's First Amendment and due process rights were not violated.

Finally, Hill contends that his due process rights were violated when he was identified as a sex offender under IMPP 11-115. He asserts that the definition of a sex offender contained in K.S.A. 2003 Supp. 22-4902 is the only definition of a sex offender that can be applied by a state agency. As such, because he was not convicted of a sexually violent crime, he argues he should not have been identified as a sex offender.

While the definition of a "sex offender" provided in K.S.A. 2003 Supp. 22-4902 determines which offenders are required to register as sex offenders upon their release from prison, IMPP 11-115 is an administrative measure used to determine the specific management and control an inmate requires while confined in a DOC facility. By being identified as a sex offender under IMPP 11-115, Hill is not being convicted of a sexually violent crime without due process of law. Rather, he is being identified because of his custodial behavior for a specific kind of management and treatment while in custody. The decision to apply IMPP 11-115 to Hill is an administrative determination, supported by evidence in this case, and should be given deference by the court. The determination that Hill's sexually motivated custodial behavior qualified him as a sex offender under the definition provided by IMPP 11-115 is not a violation of his due process rights. See *Superintendent v. Hill*, 472 U.S. 445, 454-55, 86 L. Ed. 2d 356, 105 S. Ct. 2768 (1985).

Hill's constitutional rights were not violated by the application of IMPP 11-115, and he has failed to state a claim upon which relief can be granted. The district court did not err in summarily dismissing Hill's 60-1501 petition.

Affirmed.