NOT DESIGNATED FOR PUBLICATION

No. 114,162

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MATTHEW JOHNSON,
*Appellant*,

v.

RAY ROBERTS, Secretary;
JAY SHELTON, Warden, Norton Correctional Facility,
*Appellees*.

MEMORANDUM OPINION

Appeal from Norton District Court; PRESTON PRATT, judge. Opinion filed May 13, 2016.
Reversed and remanded with directions.

*Allen Shelton*, of Shelton Law Firm, P.A., of Oberlin, for appellant.

*Robert E. Wasinger*, legal counsel, Kansas Department of Corrections, for appellees.

Before STANDRIDGE, P.J, LEBEN and POWELL, JJ.

*Per Curiam*:  Matthew Johnson appeals the district court's decision to summarily deny his petition for writ of habeas corpus under K.S.A. 2014 Supp. 60-1501. In his petition, Johnson alleged a disciplinary hearing officer erroneously deprived him of his right to procedural due process during a disciplinary hearing and that his rights were substantially prejudiced as a result. For the reasons stated below, we agree with Johnson. Accordingly, the judgment of the district court is reversed, and the case is remanded with directions for the district court to enter judgment in favor of Johnson and to order the Secretary of Corrections set aside the disciplinary decision entered against Johnson and

1

provide a new hearing to Johnson consistent with principles of due process as described in this memorandum opinion.

FACTS

In August and September 2014, Johnson was an inmate at the Norton Correctional Facility (NCF). At about 9:30 p.m. on August 31, 2014, Corrections Officer Hillebrand observed Johnson laying on his bunk seemingly in an altered state of consciousness. Johnson was staring at the ceiling, unable to answer questions verbally, unable to rise to a sitting position on his own, and communicated only through slight nods of his head. A medical emergency was called over the radio. The next day, Hillebrand completed a disciplinary report detailing the above observations and alleging that Johnson violated K.A.R. 44-12-311, which prohibits inmates from being drunk, intoxicated, or in a chemically induced state of altered consciousness.

After receiving the disciplinary report, Johnson executed several requests for witnesses to testify at his disciplinary hearing. Relevant to this appeal, he asked permission to call Corrections Officer Launchbaugh as a witness. The disciplinary report listed Launchbaugh as a staff witness. In his request, Johnson said Launchbaugh would testify about "[h]is involvement in [the] incident, that no contraband was found in [Johnson's] cell, property or person." The hearing officer denied Johnson's request for Launchbaugh to testify. The reason provided to Johnson for the hearing officer's decision was that a statement from this witness already had been provided. The hearing officer apparently was referring to a document in which Launchbaugh was asked to provide a written statement setting forth the information he had regarding the incident leading to Johnson's disciplinary report. Launchbaugh wrote:  "As stated, [Inmate] Johnson 102119 could not move on his own. Could barely speak or function. Seemed to be on something." Launchbaugh did not provide any other information.

2

Johnson also requested permission to call as a witness Patricia McCartney, an Advanced Practice Registered Nurse (APRN) and a Certified Family Nurse Practitioner (FNP-C). Johnson alleged McCartney would testify about the types of medical conditions that cause the symptoms exhibited by Johnson. The hearing officer marked a box indicating that this request was approved. But next to the box, in an area reserved for providing a reason for the hearing officer's decision *denying* a request, he wrote only "statement requested."

Nurse McCartney ultimately provided a written statement detailing what happened after the medical emergency was called for Johnson. McCartney noted that an unidentified nurse reported that Johnson was lying on his bed with his eyes closed, that his skin was cool and ashen, and that he did not respond to the nurse verbally until they reached the clinic. Johnson's blood pressure and pulse were above normal. His pupils were also dilated and unresponsive to light. McCartney reported that Johnson was transferred to Norton County Hospital (NCH) for an "unresponsive episode evaluation."

McCartney also reported the following in her written statement:

"1)    No cause of the unresponsive episode was found while at NCH and he was kept overnight for observation. He stayed another night in the infirmary and was evaluated by writer on Monday prior to discharge. No abnormalities were noted on exam.

"2)    Johnson is correct in saying that there are many reasons that cause similar symptoms, however in review of his chart, he has no sick call, nor chronic care issues that would cause him to be unresponsive (like seizures or st[r]oke); he does not have hypertension to cause increased heart rate or high blood pressure; and he has no medical reason for dilated pupils and unresponsiveness. Also in review of his chart I don't find any treatment of any symptoms or episodes of passing out/unresponsiveness."

Before the hearing, Johnson filed a written document making several requests. First, Johnson renewed his request for all witnesses he previously had asked to be called as witnesses. Second, he requested a continuance of the hearing so that he could prepare his defense. Third, Johnson specifically renewed his request for Officer Launchbaugh to testify at the hearing. Johnson alleged that Launchbaugh's written statement was inadequate and that it merely endorsed Officer Hillebrand's report. Johnson also claimed that Launchbaugh's opinion stating Johnson seemed to be on something was vague, conclusory, and unsupported by personal knowledge. Johnson asked that Launchbaugh's written statement be stricken from the record if Launchbaugh was not permitted to testify in person at the hearing. Finally, Johnson alleged bias on the part of the hearing officer and asked the hearing officer to recuse himself.

The hearing officer also denied all of Johnson's other requests and declined to recuse himself. In so doing, the hearing officer specifically noted that Officer Launchbaugh's statement would be a part of the record and "given weight at finding."

Officer Hillebrand and Johnson were the only witnesses permitted to testify at the hearing. Hillebrand testified Johnson was alone in his room at the time he found Johnson unresponsive, and the door to the room was closed but unlocked. Hillebrand said Johnson just stared at the ceiling in response to questions asked by Hillebrand. Hillebrand also testified that Officer Lauchbaugh asked Johnson several times whether Johnson had taken anything, but, again, there was no response.

On cross-examination, Officer Hillebrand said his medical training was limited to that provided by NCF. Hillebrand testified he did not know what medical conditions could have caused the symptoms Johnson displayed. Hillebrand did not smell any alcohol or intoxicants on Johnson and did not find any drugs or contraband during a search of Johnson's cell. According to Hillebrand, Johnson's eyes were bloodshot. Hillebrand

4

ultimately admitted that, based on his medical knowledge, the incident was nothing more than a medical emergency.

Johnson testified at the hearing that he had no further issues after the incident. When asked if he had any issues prior to the incident, Johnson said he had asthma but did not have an inhaler with him at NCF. The hearing officer then asked what Johnson thought happened, to which Johnson responded, "I have no idea, I wish I knew." The hearing officer also considered a written statement prepared by Johnson in advance. In it, Johnson asserted there was no evidence to support at finding that he had violated K.A.R. 44-12-311. Among other things, Johnson emphasized in his statement that he submitted two urinalysis samples for testing after the incident and both test results were negative.

At the end of the hearing, the hearing officer concluded it was more likely than not that Johnson was in a chemically induced altered state of consciousness. In support of the hearing officer's conclusion, the hearing officer relied on the written incident report, the witness statement from medical staff regarding Johnson's medical history prior to the medical emergency, and the testimony from Johnson that the symptoms had not recurred since the medical emergency. The hearing officer sentenced Johnson to 15 days of disciplinary segregation, a loss of 90 days' good-time credit, and 60 days of restrictions.

Johnson filed an appeal with the Secretary of Corrections, but the Secretary approved the hearing officer's decision in all respects. On November 3, 2014, Johnson filed a petition for writ of habeas corpus in Norton County District Court. In it, he alleged that the evidence presented at his hearing was insufficient to support the hearing officer's findings of fact. He also alleged that he was deprived of his constitutional right to procedural due process because the hearing officer denied Johnson's requests to present witness testimony and because the hearing officer was not impartial.

5

On November 25, 2014, the district court ordered the State file a written response within 30 days to the claims set forth in Johnson's habeas petition. After obtaining an extension of the deadline to file its response, the State filed a motion to dismiss and for summary judgment arguing that Johnson was provided the requisite due process and that the hearing officer's finding of a disciplinary violation was supported by some evidence. In this dispositive motion, the State explained that disciplinary actions brought under K.A.R. 44-12-311 were extremely rare before 2012 but had become more common since 2012 due to the increasing prevalence of K-2 and other synthetic drugs in the facility. The State's explanation continued as follows:

> "If an unknown substance is found by corrections officers, it can be tested to identify whether it is K-2 or a similar synthetic drug; however, the [Kansas Department of Corrections] has no test to determine if an offender is under the influence of the synthetic drug, so corrections officials key on identifying behavior which results from use of synthetic drugs. There is not a constant pattern of behaviors for all users, as the compounds used in the synthetic drugs vary so that the user never really knows the kind or depth of high he or she will get from the synthetic drug. These drugs are extremely dangerous and can cause death, and their use is a major concern throughout the Department.
>
> "If an offender is observed exhibiting any behavior that appears to be an altered state of consciousness, a [disciplinary report] is written; however, prior to any finding of guilt the medical staff at NCF are contacted to determine if the offender has a medical condition or is prescribed a medication that would cause such behavior. If there is no such medical reason or other reason that would reasonably explain the behavior it is assumed the offender has used a synthetic drug."

The State attached three exhibits to it motion. First, the State included Johnson's Kansas Adult Supervised Population Electronic Repository record, which listed Johnson's crimes of conviction and disciplinary record. Second, it attached documents relating to the disciplinary report and hearing at issue in this case. Finally, it attached an affidavit of

Joel Hrabe, a deputy warden at NCF. Deputy Warden Hrabe's affidavit included information about K-2 and the symptoms exhibited by those under its influence.

The district court summarily dismissed Johnson's K.S.A. 60-1501 petition for relief. In its written order of dismissal, the district court found that a hearing was not required because the motion, files, and records conclusively showed that Johnson was not entitled to relief. Because the exhibits attached to the State's motion were not part of the record at the administrative level, the court declined to consider those exhibits in deciding to summarily dismiss the petition. After the court issued its ruling, Johnson filed a motion to strike/motion for summary judgment. The district court denied Johnson's motion, finding that its earlier order of summary dismissal was appropriate.

ANALYSIS

The petition in this case was resolved by the Secretary's motion to dismiss for failure to state a claim upon which relief may be granted. When a district court dismisses a petition filed under K.S.A. 60-1501 for failure to state a claim, an appellate court reviewing the dismissal must accept as true the facts alleged by the petitioner and any reasonable inference drawn therefrom. If such facts and inferences support the petitioner's claims under any theory, the dismissal is improper. See *Hill v. Simmons*, 33 Kan. App. 2d 318, 320, 101 P.3d 1286 (2004).

To prevail on claims raised in a K.S.A. 60-1501 petition, a petitioner must allege shocking and intolerable conduct or continuing mistreatment of constitutional dimensions. 33 Kan. App. 2d at 320 (citing *Bankes v. Simmons*, 265 Kan. 341, 349, 963 P.2d 412, *cert. denied* 525 U.S. 1060 [1998]). In this case, Johnson claims he was deprived of procedural due process because (a) the hearing officer denied his requests to present and confront witnesses at the hearing; and (b) the hearing officer was not impartial. Johnson also claims the evidence presented at his hearing was insufficient to

7

support the hearing officer's finding that Johnson violated K.A.R. 44-12-311, which prohibits inmates from being drunk, intoxicated, or in a chemically induced state of altered consciousness.

The Due Process Clause of the United States Constitution prevents a person from being deprived of a significant interest in life, liberty, or property without due process of law. *Hudson v. State*, 273 Kan. 251, 259, 42 P.3d 150 (2002). The issue of whether due process has been afforded is a question of law over which this court exercises unlimited review. *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009). In the context of prison disciplinary proceedings, the threshold inquiry is whether the prisoner has been deprived of a significant interest deserving procedural due process protection. *Hogue v. Bruce*, 279 Kan. 848, 850-51, 113 P.3d 234 (2005). Only if those rights are implicated must the court determine "the extent and nature of the process which is due." 279 Kan. at 851. Here, the Secretary concedes that Johnson's loss of good-time credit implicated his due process rights. This position is supported by our Kansas caselaw. See 279 Kan. at 851 (loss of good-time credit implicated petitioner's due process rights).

We now shift to determining the extent and nature of the process due to Johnson. Because institutional needs and objectives must be balanced against the rights of the inmate in a prison disciplinary proceeding, "'the full panoply of rights due a defendant in [criminal] proceedings does not apply.'" 279 Kan. at 851. Nevertheless, an inmate generally has the right in a prison disciplinary proceeding to be present at the hearing, to receive an impartial hearing, to receive written notice of the charges sufficient to prepare a defense, to receive a written statement of any findings regarding the evidence and any reasons for imposing the discipline, to call and confront witnesses, and to present documentary evidence. K.A.R. 44-13-101(c).

8

1. *Witness testimony*

Johnson argues he was deprived of his constitutional right to procedural due process rights when the hearing officer denied his request to have two witnesses—Officer Launchbaugh and Nurse McCartney—testify in person at the disciplinary hearing. Pursuant to K.A.R. 44-13-307(b), a hearing officer may deny a written request to call a witness if the proffered testimony is (1) clearly irrelevant or immaterial, (2) repetitious of other proffered testimony, or (3) is properly excluded for reasons specified in K.A.R. 44-13-405a. In turn, K.A.R. 44-13-405a contains a list of correctional facility considerations that a hearing officer may properly balance against the inmate's right to call a witness. If the hearing officer ultimately denies an inmate's request to call a witness at the hearing, both the decision and the reasons for denying the request must be documented in writing, either on the request form or in the disciplinary case record. K.A.R. 44-13-307(c). The prison official bears the burden of persuasion to show that there is a reasonable basis for overriding the inmate's right to call witnesses. *Sauls v. McKune*, 45 Kan. App. 2d 915, 920, 260 P.3d 95 (2011).

Significantly, both of the administrative regulations cited above relate to the decision by a hearing officer to grant or deny an inmate's request to call a witness. But the crux of Johnson's due process argument is that he was deprived of the opportunity to confront and cross-examine Officer Launchbaugh and Nurse McCartney in order to inquire into the statements they provided. The administrative rule governing confrontation and cross-examination by an inmate in a disciplinary hearing is K.A.R. 44-13-403(q), which permits a hearing officer to deny a request to confront and cross-examine witnesses "if deemed necessary in any case except class I cases." K.A.R. 44-13-403(q). If the disciplinary charge alleges a violation of a class I offense, as it does here, this subsection of the regulation provides that an inmate's right to confront or cross-examine a witness "may be limited or denied *only* if necessary to protect the safety of an accuser, informant, or witness or if necessary to maintain facility safety, security, and

9

control." (Emphasis added.) K.A.R. 44-13-403(q). "Unless there is a security risk endangering some person, the explanation shall be in the record. If there is such a security risk, a written explanation of the reason shall be sent to the warden with a copy to the secretary for confidential review." K.A.R. 44-13-403(q).

Here, when Johnson made his initial request for Officer Launchbaugh to testify, the hearing officer denied Johnson's request because Launchbaugh already had provided a witness statement. After Johnson renewed his request at the disciplinary hearing, the hearing officer merely noted without elaboration that it would consider Launchbaugh's written statement in the decision-making process. But the fact that a written statement already has been provided is not an adequate reason to deny a witness request under K.A.R. 44-13-307(b). Further, the hearing officer accepted written testimony from Lauchbaugh without providing any reasons for denying Johnson his right to confront and cross-examine Launchbaugh. See K.A.R. 44-13-403(q). There is nothing in the record to suggest a security risk was present that would have justified this silence. In short, the prison officials failed in their burden to show that there was a reasonable basis to exclude Launchbaugh as a witness subject to cross-examination at the disciplinary hearing.

Johnson argues that the hearing officer also denied his request to have Nurse McCartney testify at his hearing. Whether the hearing officer actually denied the request is unclear from the record. Johnson concedes that on his written witness request, the hearing officer marked that the request was approved. But he also points out that the hearing officer wrote "statement requested" in a space reserved for providing reasons for the *denial* of a witness request. McCartney did provide a written statement, but she did not appear in person to testify at Johnson's hearing. The hearing officer clearly relied on McCartney's statement because his findings specifically reference a "witness statement from medical staff." This could only have been a reference to McCartney's statement.

10

As a preliminary matter, the State argues that McCartney could not have been compelled to testify at the hearing regardless of the hearing officer's decision regarding Johnson's witness request. It cites K.A.R. 44-13-307(e), which states in part:

"The appearance of a witness requested by either the reporting officer or the accused inmate shall be voluntary, and neither the request nor the issuance of summons according to this regulation shall compel an appearance. However, issuance of summons by a hearing officer to an inmate or staff member pursuant to K.A.R. 44-13-403 shall compel an appearance."

The State asserts Nurse McCartney is not a staff member and therefore could not be compelled under any circumstances to testify at a disciplinary hearing. But K.A.R. 44-13-403 provides a more detailed list of the types of witnesses that may be compelled to appear. A hearing officer may compel the appearance of any "inmate, staff member, volunteer, or contract employee called as a witness." K.A.R. 44-13-403(*l*)(1). The State described McCartney in one court filing as a "contract health care provider to the [Kansas Department of Corrections]." And in the signature line of McCartney's statement, she included both "Norton Correctional Facility" and "Corizon Healthcare Services" under her name and title. This indicates that McCartney was, in fact, a contract employee who could be compelled to testify at an inmate's disciplinary hearing under K.A.R. 44-13-403(*l*)(1).

In sum, and similar to the request for Officer Launchbaugh to testify, we find the hearing officer failed to provide a statutorily valid reason for denying Johnson his right to confront and examine Nurse McCartney. Unless a security risk endangered some person, an explanation for denying or limiting confrontation or cross-examination must appear on the record. K.A.R. 44-13-403(q). No security risk is apparent from the record, nor is one alleged by the State. Based on our review of the facts presented and the applicable regulations, we find the prison officials failed show there was a reasonable basis to exclude McCartney as a witness subject to cross-examination at the disciplinary hearing.

11

Based on the discussion above, we find the hearing officer violated Johnson's constitutional right to procedural due process by depriving Johnson, without a valid reason, of the right to call, confront, and cross-examine witnesses at his disciplinary hearing. Since we have found a constitutional violation, the next question is whether Johnson is entitled to a reversal of the hearing officer's ruling and remand for a new hearing. When an error infringes on a person's constitutional rights, that error may be declared harmless if the party benefitting from the error persuades the court "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 3d 705, *reh. denied* 386 U.S. 987 [1967]).

Johnson was convicted of violating K.A.R. 44-12-311, which states in part: "No inmate shall at any time be drunk, intoxicated, or be in a chemically induced state of altered consciousness." Based on a plain reading of this regulation, merely being in a state of altered consciousness is not a violation. That state must be chemically induced.

Here, little evidence was presented at the hearing to show that Johnson was in a *chemically induced* state of altered consciousness. Officer Hillebrand's disciplinary report indicated that Johnson appeared to be an altered state of consciousness but did not assert that the altered state was chemically induced. At the hearing, Hillebrand testified that Officer Launchbaugh asked Johnson whether Johnson had taken anything. According to the summary of the hearing, Hillebrand stated: "There was no response, nod of head." This statement is ambiguous, and because no transcript of the hearing appears in the record, there is no way to know whether Hillebrand meant that there was no response and no nod of the head or whether he meant there was no *verbal* response, but there *was* a nod of the head. At the disciplinary hearing, Hillebrand also testified that, based on his medical knowledge, the incident was nothing more than a medical emergency.

12

Beyond Officer Hillebrand's testimony, the only evidence presented at the hearing indicating Johnson's state of alleged chemically induced consciousness came from Officer Launchbaugh's and Nurse McCartney's written statements. Launchbaugh asserted vaguely that Johnson "seemed to be on something." In her statement, McCartney declined to express any opinion as to whether Johnson's condition was chemically induced. Instead, McCartney asserted that she could deduce no cause for the unresponsive episode and that, based on a review of Johnson's chart, he had no history of chronic care issues that cause unresponsiveness, he did not have hypertension, and he did not have any issues that would have caused his dilated pupils and unresponsiveness. Meanwhile, the record reflects that no drugs were found during a search of Johnson's cell after the incident. Further, the State concedes in its brief that a urinalysis test performed on Johnson was negative. At the hearing, Johnson testified that he did not know what had happened and that he had had no issues since the incident.

Based on the facts in the record on appeal, we conclude the due process violations here were not harmless. First, Johnson was not allowed to question Officer Launchbaugh about why Launchbaugh believed Johnson was on something and what Launchbaugh thought Johnson was on. Second, in Johnson's initial appeal to the Secretary of Corrections, he reported his belief that his symptoms were the result of an adverse allergic reaction. But Nurse McCartney's statement did not address allergies. Yet, Johnson was prevented from questioning McCartney about this or any other medical possibility. In sum, the factual record does not support finding beyond a reasonable doubt that there was no reasonable possibility that the hearing officer's errors did not affect the verdict.

2. *Bias*

Johnson next argues that he was deprived of his right to an impartial hearing because his hearing officer was biased. Before his disciplinary hearing, Johnson asked the

hearing officer to recuse himself. As part of that request, Johnson alleged that the hearing officer "made statements in orientation that he always beleived [*sic*] the testimony of officers and staff over that of inmates." Although the hearing officer denied Johnson's request that he recuse, the hearing officer provided no reason for his decision to remain on the case as a decision maker. In summarily dismissing Johnson's K.S.A. 60-1501 petition, the district court judge ultimately made the following findings on the issue of bias:

> "Regarding Johnson's claim that he was denied a fair hearing, he requested that the hearing officer recuse because of statements made during orientation. Johnson has not provided sufficient evidence that the hearing was other than impartial. The hearing officer did follow required procedures and time frames, Johnson was advised of the charge against him, Johnson was allowed to present a defense, and the sanctions were within the limits for a class I offense. If the hearing officer did error [*sic*] it was in not allowing Johnson's requested witnesses or documentation, but as discussed previously that error (if it was error) was harmless. Johnson has the burden of proof to establish he did not receive an impartial hearing. He has not met that burden."

We reiterate at this point that the district court summarily dismissed Johnson's petition on grounds that it failed to state a claim for relief under K.S.A. 60-1501. Thus, in determining whether summary dismissal was proper, we must accept the inmate's alleged facts as true. *Hogue*, 279 Kan. at 850. Assuming Johnson's allegation was true, then the hearing officer told Johnson during Johnson's orientation into the facility that the hearing officer would always believe statements made by corrections officers and staff over statements made by inmates. Given the hearing officer was the finder of fact in a case where the testimony of an inmate was at odds with the testimony of corrections officers, we find Johnson has pled an actionable claim alleging he was deprived of his due process right to an impartial hearing based on the hearing officer's bias.

14

The State argues on appeal that the record does not support Johnson's allegation. In support of this argument, the State cites only the portion of the district court's order quoted above. But contrary to the district court's findings, the hearing officer did not follow the required procedures. The hearing officer failed to cite a valid reason for denying Johnson's motion to call Officer Launchbaugh and Nurse McCartney as witnesses. The hearing officer also hindered Johnson's ability to present a defense by prohibiting Johnson from cross-examining Launchbaugh and McCartney. While these facts do not conclusively prove Johnson's claim of bias, they could be used to corroborate it.

For the reasons stated above, we conclude the hearing officer's decision finding Johnson was in a chemically altered state of consciousness in violation of K.A.R. 44-12-311, as well as the decision to impose sanctions, must be set aside because the decisions were rendered in an administrative process that deprived Johnson of his right to due process and a fair hearing. Accordingly, the judgment of the district court is reversed, and the case is remanded with directions to enter judgment in favor of Johnson and with directions to order the Secretary of Corrections to set aside the disciplinary decision and sanctions entered against Johnson and provide a new hearing to Johnson consistent with this opinion. Given our decision today, we decline to reach Johnson's claim of insufficient evidence.

Reversed and remanded with directions.