NOT DESIGNATED FOR PUBLICATION

No. 124,991

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NOAH D. REED,
*Appellant*,

v.

JEFF BUTLER, Warden,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Opinion filed December 16, 2022. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant, and *Noah D. Reed*, appellant pro se.

*Fred W. Phelps Jr.*, deputy chief legal counsel, Kansas Department of Corrections, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and CLINE, JJ.

PER CURIAM: Noah Demetrius Reed appeals the district court's summary dismissal of his K.S.A. 60-1501 petition, finding it failed to state a claim for which relief could be granted. On appeal, Reed makes arguments not supported by facts alleged in his petition and fails to allege shocking and intolerable conduct or a mistreatment of a constitutional stature, as is required for a K.S.A. 60-1501 petition. We thus find no error in the district court's summary dismissal of his petition.

*Factual and Procedural Background*

In February 2021, a $600 payment from the United States Treasury was deposited into Reed's inmate trust account. A couple of months later, a $1,400 payment from the United States Treasury was deposited into Reed's inmate trust account. Reed alleges the payments were "apparently" stimulus money payments from the Consolidated Appropriations Act and the American Rescue Plan Act, respectively.

After the Kansas Department of Corrections (DOC) confiscated or garnished most of that money, Reed submitted grievances disputing the amounts deducted. He then submitted a "Special Kind of Problems" grievance alleging the DOC was retaliating against him for filing his previous grievances. The warden at El Dorado Correctional Facility and the DOC Facility Management office both responded and refused to take further action on Reed's grievances because Reed's complaints were "not an emergency" and did "not constitute difficult or complex problems justifying treating them as special problems."

In October 2021, Reed filed multiple documents indicating he was petitioning for writ of habeas corpus under K.S.A. 2021 Supp. 60-1501. In January 2022, the district court reviewed and summarily dismissed Reed's petition. The district court held Reed failed to state a claim upon which relief could be granted because: (1) habeas corpus was an improper avenue for many of Reed's complaints, such as monetary disputes or personal injuries; (2) Reed did not adequately allege any constitutional claims; (3) Reed made no atypical complaints of imprisonment; and (4) Reed's complaints about housing him and monitoring gang activities involve typical prison administration so they were "best left to the proper penological authorities."

When Reed moved for reconsideration, the district court construed Reed's motion as a motion to alter or amend its ruling, and it denied relief. Reed appeals.

*Did the District Court Err in Summarily Denying Reed's K.S.A. 60-1501 Petition?*

Reed contends the district court erred in summarily denying his K.S.A. 60-1501 petition because garnishment of his economic impact payments violated his rights under the Fifth and Fourteenth Amendments of the United States Constitution. Reed also filed a pro se brief, despite the fact that he is represented on appeal by counsel, adding an Eighth Amendment claim. See *State v. Holmes*, 278 Kan. 603, 620, 102 P.3d 406 (2004) ("While a party has the right to represent himself or herself or be represented by counsel, he or she does not have the right to a hybrid representation."). The State correctly responds that money damages may not be awarded in a habeas corpus proceeding. See *Foster v. Maynard*, 222 Kan. 506, 513, 565 P.2d 285 (1977). Thus we focus solely on Reed's constitutional claims.

To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary dismissal is proper. 289 Kan. at 648-49. See K.S.A. 2021 Supp. 60-1503(a). The district court relied on this legal authority here. We review its summary dismissal de novo. 289 Kan. at 649.

*Fifth Amendment Takings Claim/CAA*

For his Fifth Amendment takings claim, Reed contends the district court did not determine whether any of the amounts deducted from his economic impact payments provided him with a "dollar-for-dollar benefit."

This argument relies on language in the Consolidated Appropriations Act (CAA). 26 U.S.C. § 6428A (2020). That Act provided a second round of economic impact payments: $600 per eligible adult, plus $600 per qualifying child. 26 U.S.C. § 6428A(a). Subsection 272(d) of Title II of division N of the CAA, which has not yet been codified into the United States Code, specifies that "no applicable payment shall be subject to, execution, levy, attachment, garnishment, or other legal process, or the operation of any bankruptcy or insolvency law." Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, § 272(d)(2)(A), 134 Stat. 1182, 1972 (2020). Payments made "electronically by direct deposit through the Automated Clearing House (ACH) network" must be issued "using a unique identifier that is reasonably sufficient to allow a financial institution to identify the payment as an applicable payment." CAA § 272(d)(2)(B), 134 Stat. at 1972-73. But even if the applicable payment lacks a unique identifier, the financial institution must, "upon the request of the account holder," treat the funds "as exempt from a garnishment order." CAA § 272(d)(2)(C)(ii), 134 Stat. at 1973.

Reed relies on *Beal v. Davids*, No. 1:21-cv-522, 2021 WL 2934835 (W.D. Mich. 2021), where an inmate alleged the Michigan Department of Corrections (MDOC) improperly seized his $600 economic impact payment issued under the CAA to pay his debts. The district court considered the CAA and found that while Title II of the CAA did not define the term "financial institution," the court presumed that the MDOC operates as a financial institution under Title II because it "administers the trust accounts of the prisoners in its custody," "accepts the relevant payments from the federal government," and "appears capable both of effectuating garnishment orders and of notating exempt payments." 2021 WL 2934835, at *5. The court then found the plaintiff had stated a plausible claim for relief against the warden:

"Plaintiff's complaint and attachments suggest that Defendants [the warden and employees] seized on a technicality—that his payment arrived as a federal refund rather than as an encoded economic impact payment. Yet, the Defendants appeared to act in

4

three capacities simultaneously: the financial institution obligated to treat Plaintiff's funds as exempt under Title II, a creditor to whom Plaintiff owed debts, and the State agency capable of directing a garnishment of Plaintiff's funds to pay the creditor. That conflict could plausibly give Defendants a reason to justify seizing Plaintiff's funds to pay his debts. However, Title II provides a secondary method for protecting relevant payments from garnishment. Plaintiff appears to have employed that secondary method when he sent his kite on May 3, 2021[, in which he requested that the Ionia Correctional Facility and the MDOC treat his $600 payment issued under the CAA as exempt from garnishment].

"In short, Title II arguably mandated the Defendants—corrections officers at the financial institution holding Plaintiff's funds—treat $600 of Plaintiff's funds as exempt from garnishment. Plaintiff alleges that they did not. Although a safe harbor provision of Title II, exists, . . . Plaintiff's allegations suggest that Defendants do not qualify. Thus, Plaintiff has alleged facts sufficient to state a claim under Title II, Section 272. [Citation omitted.]" 2021 WL 2934835, at *5-6.

Relying on the CAA and *Beal*, Reed seems to argue that the garnishment of his two U.S. Treasury payments constituted a taking of private property under the Fifth Amendment. And because the government garnished the payments without providing an "adequate post-deprivation remedy," Reed contends the CAA violated his due process rights under the Fourteenth Amendment.

But Reed makes these constitutional arguments for the first time on appeal. In his K.S.A. 60-1501 petition, Reed alleges violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, but he did not argue an impermissible taking under the Fifth Amendment. And his Fourteenth Amendment claim did not argue an inadequate post-deprivation remedy but only a liberty interest in relation to his claim of intentional inflection of emotional distress. Reed's petition is similarly silent on any claims related to the CAA and whether the warden impermissibly garnished his payments under the CAA. So his arguments on appeal are new.

Appellate courts generally do not consider new issues, or constitutional challenges, for the first time on appeal. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Although this rule has some exceptions, a party must argue why those exceptions apply. See Kansas Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36); *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (finding appellate court may consider argument raised for first time on appeal if [1] new argument involves question of law arising on proved or admitted facts that is finally determinative of case, [2] consideration of new argument is necessary to serve ends of justice, or [3] district court's judgment may be upheld as right for wrong reason). Reed has a duty to explain why he did not raise his constitutional challenge below and why this court should consider his constitutional challenge for the first time on appeal. See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015) (appellant's violation of Supreme Court Rule 6.02 is akin to improperly briefing argument). Reed has failed to satisfy that duty so we would usually refuse to consider his claim on appeal.

Still, when reviewing a K.S.A. 60-1501 petition, we must determine whether Reed's "'alleged facts and all their inferences state a claim, not only on the theories which the plaintiff espouses, but on any possible theory.'" *Hill v. Simmons*, 33 Kan. App. 2d 318, 320. 101 P.3d 1286 (2004) (quoting *Foy v. Taylor*, 26 Kan. App. 2d 222, 223, 985 P.2d 1172 [1999]). Thus, we consider whether the facts in Reed's petition support the claims he raises on appeal, despite his failure to raise them to the district court.

Our review of the facts in Reed's petition shows he does not state a claim for relief. Reed's argument makes too many assumptions without supporting facts. He simply assumes the payments were provided under the CAA, without asserting as much, and then assumes the garnishment of such money would constitute a Fifth Amendment violation. For example, Reed's K.S.A. 60-1501 petition seems to contend his stimulus payments were improperly garnished, but he does not allege facts necessary to support

6

this claim under the CAA. For example, even if we assume that the payments were made under the CAA, Reed fails to allege:

- That the funds taken from his inmate trust account consisted of stimulus payments, stating at times that his inmate trust account "consisted solely of veterans administration and social security disability benefits."
- That the payments were issued with a "unique identifier" that sufficiently allowed the DOC to identify the payments as applicable payments under the CAA. CAA § 272(d)(2)(B), 134 Stat. at 1972-73.
- Alternatively, that the payments lacked a unique identifier, but he requested the DOC to treat the funds "as exempt from a garnishment order." CAA § 272(d)(2)(C)(ii), 134 Stat. at 1973.
- That the DOC used his impact payments improperly rather than for permissible reasons such as paying Reed's restitution, court fines, fees, and costs. See *Hayes v. Graves*, No. 4:21-cv-00347-LPR, 2022 WL 822881, at *5-6 (E.D. Ark. 2022) (finding no Fifth Amendment taking because "prisoners are provided with a 'dollar-for-dollar' benefit when their stimulus funds are used to pay off their existing court fines, fees, costs, or restitution").

But even if Reed's petition asserted all the necessary facts above, he errs by assuming such claims are proper under K.S.A. 60-1501. To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, Reed's petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson*, 289 Kan. at 648. Reed does not contend the alleged garnishment of his payments were shocking or intolerable conduct, and he did not show the alleged garnishments were a "continuing mistreatment of a constitutional stature" because he did not meet his burden of proving an unconstitutional taking under the Fifth Amendment.

*Fourteenth Amendment Claim*

Reed's due process claim under the Fourteenth Amendment argues that "the district court did not determine that all deducted impact payments went towards restitution, court fines, fees, and costs." Reed relies on *Hayes* and other cases which found due process was satisfied for confiscated economic impact payments put towards restitution, court fines, and costs, but not for payments towards other funds. *Hayes*, 2022 WL 822881, at *6; *Cody v. Clark*, No. 4:22-CV-04010-KES, 2022 WL 1568871, at *15 (D.S.D. 2022).

Yet, as in his Fifth Amendment claim, Reed makes no attempt to argue that the DOC confiscated his funds but failed to apply them to restitution, court fines, or costs. At the pleading stage, to state a claim for relief, it is Reed's burden to allege that the DOC violated the law, not the DOC's burden to show that it did not.

Our standard for reviewing a district court's dismissal of a K.S.A. 60-1501 petition requires us to "accept as true the allegations in [the] petition in order to determine if the facts alleged and their reasonable inferences state a claim for relief." *Schuyler v. Roberts*, 285 Kan. 677, 679, 175 P.3d 259 (2008). Reed has not alleged that the correctional facility improperly garnished his CCA payments by applying those for purposes other than restitution, court fines, and costs. Reed's failure is fatal to his claims under the Fifth and Fourteenth Amendments.

*Eighth Amendment Claim*

In his pro se brief, Reed argues the DOC violated his rights under the Eighth Amendment. Although Reed's argument is difficult to decipher, he seems to argue prison officials violated the Eighth Amendment "pursuant to wanton negligence, and substantive limitation of property" by retaliating against him for complaining about the improper

8

garnishment of his stimulus funds. Yet that issue is inadequately briefed so we consider it waived or abandoned. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (issues not adequately briefed are deemed waived or abandoned).

Reed also argues, however, that prison officials were guilty of deliberate indifference. But Reed's petition makes no claim of deliberate indifference. He did, however, generally argue a violation of the Eighth Amendment. So again, we ask whether Reed's "'alleged facts and all their inferences state a claim, not only on the theories which the plaintiff espouses, but on any possible theory.'" *Hill*, 33 Kan. App. 2d at 320 (quoting *Foy*, 26 Kan App. 2d at 223).

Viewed liberally, Reed argues on appeal that prison officials failed to protect him from violence and harm, which resulted in "deliberate indifference" under the Eighth Amendment. And prison officials can violate the Eighth Amendment by their deliberate indifference to protecting inmates from violence and harm. See *Bowers v. Bellendir*, No. 124,020, 2022 WL 259187, at *3-6 (Kan. App. 2022) (unpublished opinion); *Astorga v. Leavenworth County Sherriff*, No. 122,387, 2020 WL 6533282, at *9 (Kan. App. 2020) (unpublished opinion).

The "governing test" for a deliberate indifference analysis includes both objective and subjective components. *Bowers*, 2022 WL 259187, at *4. The objective component is met if the prison official's deprivation of the inmate's liberty interest is "'sufficiently serious.'" 2022 WL 259187, at *4 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 [1994]). The *Farmer* Court found that for claims "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." 511 U.S. at 834. "The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Darnell v. Simmons*, 30 Kan. App. 2d 778, 781, 48 P.3d 1278 (2002) (quoting *Farmer*, 511 U.S. at 837).

9

Reed alleges new facts in his brief on appeal that, if taken as true, may satisfy the objective prong because he claims prison officials "fail[ed] to intervene during a vicious, gang-related jailhouse assault" on him in 2017 at the El Dorado Correctional Facility. His argument on appeal focuses on this "extensive physical attack from more than three inmates." But Reed did not allege these facts in his K.S.A. 60-1501 petition. And Reed fails to meet the subjective component as well, as he does not allege in his argument or in his petition that DOC officials knew of and disregarded an excessive risk to his safety. The district court thus did not err in dismissing Reed's K.S.A. 60-1501 petition for failing to state a claim under the Eighth Amendment.

The district court did not err in summarily dismissing Reed's K.S.A. 60-1501 petition because even assuming the facts alleged in Reed's petition are true, his petition does not allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." See *Johnson*, 289 Kan. at 648.

Affirmed.